PULCIFER, Respondent, v. HENRY CARLSON
BUILDERS, et al, Appellants

(31 N. W.2d 239.)

(File No. 8948. Opinion filed February 20, 1948.)
Rehearing Denied March 26, 1948.

**Royhl & Longstaff**, of Huron for Plaintiff and Respondent.

**Davenport, Evans & Hurwitz,** of Sioux Falls, for Defendants and Appellants.

SMITH, J. An employer and its carrier of workmen's compensation insurance appeal from a judgment which sets aside an instrument by which the employee releases the employer from all claims in consequence of a described injury.

On October 23, 1945, the employee suffered an injury to his left arm arising out of and in the course of his employment. He remained away from work under treatment by his physician until Monday, the 5th day of November 1945. Upon return to work he executed an agreement with the insurance carrier that names the employer and employee, describes the date, place, nature and cause of his injury, and reads in part as follows: "The terms of this agreement under the above facts are as follows: That the said Donald L. Pulcifer shall receive compensation at the rate of $15.00

per week based upon the average weekly wage of $40.25 and that said compensation shall be payable from and including the 10—30—45 day of ———— 194—, until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of South Dakota." At the same time a check for $12.50 was delivered to the employee and he executed an instrument entitled "Final Receipt and Release for Compensation Paid under South Dakota Workmen's Compensation Law." The above described agreements were filed with the Industrial Commissioner on November 15, 1945, and he noted his approval of the agreement first described by endorsement dated December 3, 1945. The employee worked from November 5 to and including December 22, 1945. Upon the advice of his physician, and because of pain, he remained away from work until the first days of February 1946. During the last days of January 1946 the insurance carrier paid the employee $62.50 by check which recited "Compensation from 11-3 thru 1-21-46." Some ten days after the employee had again returned to work the carrier paid him $35 and he executed another like "Final Receipt and Release for Compensation Paid under South Dakota Workmen's Compensation Law." This instrument, as well as those we have previously described, was prepared upon a form supplied by the Industrial Commissioner and reads as follows:

"Received of Empl. Mutual Liab. Ins Co. the sum of Thirty-five and Dollars no/100 Cents ($35.00) Making in all, the weekly payments received by me, the total sum of One hundred ten and no/100 Dollars * * * Cents ($110.00), such payment being the final payment of compensation under the South Dakota Workmen's Compensation Law and in consideration of which I hereby release and forever discharge the said Henry Carlson Builders heirs, successors and assigns, from any and all actions, causes of action, claims and demands, for, upon, or by means of any damage, loss, injury or suffering which heretofore has been or which hereafter may be sustained by me in consequence of an injury suffered by me on or about the 23 day of October 1945, while in the employment of Henry Carlson Builders and returned to work 1-31-46."

This instrument was filed with the Industrial Commissioner on February 21, 1946, and was not dissapproved by him. Thereafter the employee continued to work for the employer until laid off for lack of work, and he has since worked at common labor for other employers.

On the 30th day of August 1946 the employee commenced this action. He alleged that his left arm has become permanently partially disabled as a consequence of the injury of October 23, 1945, that he has not been paid workmen's compensation for such permanent partial disability, that his signature to the above described releases was procured by "fraud, misrepresentation and deceit" and that said releases are void because unsupported by a consideration, and prayed judgment setting aside said releases and declaring plaintiff "is not barred by any purported release or settlement from prosecuting his claim for prosecuting his claim for permanent disability to his left arm before the Industrial Commissioner of South Dakota." The answer denied the disability, set up the described agreements of release and alleged that said Releases were duly filed and approved by the Industrial Commissioner of the State of South Dakota.

The employee was unable to sustain his allegation of fraud and misrepresentation. The disability about which he now complains had become apparent to him in February 1946. He had had the advice of his physician. That advice offered a hope of improvement but did not promise a normal arm. When the final release was signed the employer's superintendent explained its character and legal effect and advised him not to sign it if his arm was not right. Therefore, the court found against him on the issue of fraud.

However, the court was of the opinion that the employee had adduced evidence from which the Industrial Commissioner might find the employee had suffered some permanent disability as a result of the injury in question for which he has not been compensated. It found the amounts received by the employee as consideration for the releases was the exact amount due for the temporary total disability resulting from the injury. Upon these facts, the

court concluded as a matter of law "That the said release above described should be set aside, vacated and cancelled to the end that the plaintiff may make proof before the Industrial Commissioner as to the nature and extent of the disability and loss of use to his arm in order that the Industrial Commissioner may make an award in accord with the law and facts," and such were the terms of its decree.

It is this legal conclusion which the employer and the insurance carrier question. They accept the factual premise found by the court.

■ Support for the judgment below obviously must be sought in some special public policy or statute abridging the freedom of contract of these parties. General principles support the release. Its all inclusive, clear and unambiguous phrases embrace the claim now made. The disability now said to be permanent was apparent at the moment the release was executed. The employee's physician testified for him and said that while he honestly hoped it would get better, he warned him he was never going to have a normal arm. Under such a state of undisputed facts it cannot be claimed that the release was not intended to extinguish the present claim. Cf. SDC 47.0241 and Petersen v. Kemper, 70 S. D. 427, 18 N. W.2d 294. According to the general principles we are now considering, it was effective. It was in writing and in this jurisdiction an obligation is extingushed by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration. SDC 47.0240. Cf. Ellens, v. Lind, 65 S. D. 620, 277 N. W. 40.

■ Thus we are brought to the contention so earnestly urged by counsel for the employee. According to this contention the right of the parties and the Industrial Commissioner to relieve the employer of any of his liabilities under the Workmen's Compensation Act is denied by the public policy evidenced by the act as a whole and by the express language of SDC 64.0302, reading as follows:

"No contract or agreement, express or implied, no rule, regulation, or other device, shall in any manner operate to

relieve any employer in whole or in part of any obligation created by this title except as herein provided."

It should be observed that this is not a contention that such a release is voidable and may be set aside on equitable grounds. The contention is that such an instrument is legally ineffective as a release; that the parties and the Industrial Commissioner are without power to extinguish a just obligation for workmen's compensation.

The contention is ruled adversely to the employee by the pronouncement of this court in Hines v. Ree Heights Implement Co., 65 S. D. 169, 272 N. W. 681. That decision reversed a judgment of the circuit court which had affirmed a further award by the Industrial Commissioner because the award was made after a like "Final Receipt and Release" had been executed and approved. The issue on appeal in that case was stated as follows:

"Appellants contend that the basic question involved upon this appeal is the authority of the Industrial Commissioner to reopen the proceedings and make further award; that the failure to proceed to reopen the case for a period of two years and five months after the final release was executed and approved barred the claimant from further proceeding for added compensation. They also challenge the sufficiency of the evidence to support the findings and the sufficiency of the findings to support the conclusions, and have argued all said assignments relating thereto together."

Our decision further reads as follows:

"We are inclined to agree with this argument of appellant. The evidence discloses that the respondent had been informed by Dr. Riggs, a short time prior to the execution of the second memorandum of settlement on August 28, 1931, that he had a 33⅓ per cent. disability. Respondent testified that Dr. Riggs has so informed him of the extent of his disability, and in view of the fact that the commissioner found the respondent's disability to be 33⅓ per cent. we fail to see upon what grounds the commissioner based his finding that the respondent was 'in ignorance as to extent of his injuries and the full measure of his disability. * * *'"

In considering the second part of finding No. 9, '* * * and in reliance on the belief that such settlements were partial only and not in complete satisfaction of his claim for said injury,' we must againd agree with the contention of appellant, that the evidence does not support such a finding. On August 28, 1931, the respondent signed an instrument which was headed by the words '* * * Final Receipt and Release, * * *' and which contained in the body of the instrument the words, '* * * I hereby release and forever discharge the said S. D. Employers Protective Ass'n., heirs, successors and assigns, from any and all actions, causes of actions, claims and demands, for, upon, or by means of any damage, loss, injury or suffering which heretofore has been or which hereafter may be sustained by me in consequence of an injury suffered by me on or about the 12th day of August, 1930, while in the employment of Ree Heights Impl. Co. * * *' There is no showing in the record that the respondent was other than an average intelligent person who could read and write, and who could understand the nature of an instrument such as the one referred to above. The only evidence offered by respondent to offset the fact that he signed this instrument, which was in the nature of a final receipt and release, is that at the time of the execution of said instrument, the respondent asked the representative of the appellant, 'Is this all?' and the representative said, 'Not necessarily.' We are of the opinion that such evidence is not sufficient to support the commissioner's finding, '* * * and in reliance on the belief that such settlements were partial only and not in complete satisfaction of his claim for said injury.' "

 The foregoing decision was handed down in April of 1937. In 1939 the legislature re-enacted the Workmen's Compensation Act, SDC 64.0101 et seq., without any change in the sections pertinent to the present contention. It is presumed that the legislature was familiar with this construction and intended the the act should be so construed subsequent to re-enactment. Brink v. Dann, 33 S. D. 81, 144 N. W. 734; Stewart v. Rapid City, 48 S. D. 554, 205 N. W. 654; and F. M. Slagel & Co. v. Bushnell, 70 S. D. 250, 16 N. W.2d 914, 156 A. L. R. 1070.

Our subsequent decisions have assumed the validity of such a "Final Receipt and Release." Chittenden v. Jarvis, 68 S. D. 5, 297 N. W. 787; Nilsson v. Krueger, 68 S. D. 11, 297 N. W. 790 and Nilsson v. Krueger, 69 S. D. 312, 9 N. W.2d 783.

We think the assumption upon which these cases rest is sound. A legislative intention to prohibit agreements between the employer and employee with reference to compensation due the employee is not reflected by the provisions of the Workmen's Compensation Act. On the contrary, as is so clearly pointed out in Chittenden v. Jarvis, supra, and in Bailey v. Hess, 55 S. D. 602, 227 N. W. 69, the act contemplates such agreements but seeks to protect the public interest and the interest of the employee by investing the Industrial Commissioner with supervisory powers. SDC 64.0302, quoted supra, proscribes such agreements "except as herein provided." SDC 64.0509 provides as follows:

"If the employer and employee reach an agreement in regard to the compensation under this title, a memorandum thereof shall be filed with the Commissioner by the employer or employee, and unless the Commissioner shall, within twenty days, notify the employer and employee of his disapproval of the agreement by registered letter sent to their addresses as given in the memorandum filed, the agreement shall stand as approved and be enforcible for all purposes under the provisions of this title."

The power to disapprove the agreements of the parties, and thus to render them ineffective, with which the Industrial Commissioner is clothed, is the device adopted by the legislature to afford the desired protection. If that device is deemed inadequate, relief must be sought at the hands of the legislature.

It follows we are of the opinion that the facts found by the court do not support its conclusion of law.

The judgment of the trial courts is reversed.

ROBERTS, P.J., and RUDOLPH, J., concur.

SICKEL and HAYES, JJ., dissent.

SICKEL, J. (dissenting). This is an action brought in equity for the purpose of canceling an agreement made

between employer and employee, discharging the employer from all liability under the Workmen's Compensation Law. If it is set aside the employee may pursue a claim against the employer for partial and permanent loss of the use of his arm.

The circuit court found that the consideration of $35, acknowledged in the release and all other payments of compensation made to the employee, represent weekly compensation for temporary incapacity; that the employee has received no compensation whatever for partial and permanent loss of the use of his arm, and these findings are amply supported by the evidence. The majority opinion decides that the obligation to compensate the employee for partial and permanent loss of the use of his arm is extinguished by the release, though the employee received no consideration therefor. It is a general rule that "A release of the employer from further liability is not binding where it is given for the payment of an amount already due under the act or under a prior agreement." 71 C. J., Workmen's Compensation, § 690. Such a settlement is "without adequate consideration, and void under the law." Maryland Casualty Co. v. Hodge, 5th Cir., 49 F.2d 127, 128; Farris v. United States Fidelity & Guaranty Co., Tex. Civ. App., 251 S. W. 612; Lopes v. B. B. & R. Knight, Inc., 50 R. I. 16, 144 A. 439; Acme Body Works v. Koepsel, 204 Wis. 493, 234 N. W. 756, 236 N. W. 378.

In the case of Birdsell Mfg. Co. v. Tripp, 80 Ind. App. 450, 141 N. E. 252, 253, the employee executed a final receipt designated as a release for final settlement. The court said:

"Appellant's representative figured the amount due him and informed appellee that it would be necessary for him to sign the receipt before he could get the compensation then due him. When the receipt was executed, appellant was owing appellee for four weeks' compensation, which it was obligated to pay, so that the consideration for the signing of the receipt was the payment of the amount then due and owing appellee. Appellee could, but did not, read the receipt and release before signing the same. This, however, is no

reason why the purported release for which appellant paid nothing should be permitted to stand in the way of the payment to appellee of the compensation to which he is entitled."

The majority opinion in this case is to the effect that the writing will support the release, though there was no consideration for it, on authority of SDC 47.0240. This is the old rule of the common law applicable to sealed instruments, transferred to written releases. But even under the common law rule that consideration is conclusively presumed in case of releases under seal, a court of equity will inquire into the consideration. 45 Am. Jur., Releases, § 52; 17 C. J. S., Contracts, § 72; Barnes v. Ward, 45 N. C. 93, 57 Am. Dec. 590. The law supplies no means, and affords no remedy, by which contracts made without consideration may be enforced (17 C. J. S., Contracts, § 70), and in my opinion that rule has not been abrogated by SDC 47.0240.

HAYES, J., concurs in the foregoing opinion.

HAYES, J. (dissenting). I am unable to agree with the views of my esteemed colleagues as reflected in the majority opinion.

Always of the utmost and constant concern to the people of this state and nation is the application of the principle that public servants shall confine themselves to the performance of acts which are expressly authorized by law or which are essential and incident to the exercise of powers expressly granted by law to such servants. The responsibility for the proper application of this principle rests largely with the courts. In recognition thereof I hold up to view the question of authority on the part of the Industrial Commissioner to approve, or to fail to disapprove, what is in part designated as a "final receipt and release," a copy of the usual form of which release appears in the majority opinion, in cases where the injured employee has not been paid that amount which the law states he shall receive.

At the outset, and in all fairness to the commissioner, it should be pointed out that in the case now before this court, and in each of the cases cited in the majority opinion involving a "release", the commissioner has taken the posi-

tion that the filing of such an instrument in his office did not terminate his authority to review as provided by SDC 64.0609. Accordingly, it is proper to assume that the commissioner has adhered to the view that a release is not "final" unless the injured employee has been compensated in an amount equal to what the law states "shall be paid," SDC 64.0403, as amended, for the injury suffered. It should be observed also that in this and in each of the cases referred to above the injured employee had been induced, by one means or another, to surrender some substantial part of the compensation specifically provided by law for the known results of his injury. This practice, I believe, is expressly prohibited by SDC 64.0302 hereinafter set forth.

It is to be noted further that in none of the cases cited in the majority opinion is the question of the authority of the commissioner to approve a release, said to be final, specifically treated. It is, however, necessarily implied therefrom that this court has looked upon such a release as binding upon the commissioner if not disapproved by him. The legal effect of such holding is to deprive the commissioner of his continuing jurisdiction to award compensation provided for the injured employee as the nature and extent of his injury come to better view and may be determined, rather than guessed about, by eyes trained to make such a determination after the passage of a period of time sufficient to enable the results of an injury to be adjudged by those best able to decide the matter. It seems clear to me that one of the avowed objectives of the law is thus thwarted. If the release is held binding the employee is then driven to a court of equity with his appeal for reinstatement before the commissioner faced with the unsound supposition that he had, because of a mistake on his part or on the part of someone else in estimating his physical condition, voluntarily signed away the rights expressly granted to him by law.

I cast my lot with those who harbor the belief that we may, from the language and make-up of a legislative enactment, be guided to an insight of the composite mind of the enacting body. Then let us look at Chapter 376, Session Laws of 1917, South Dakota.

Part I of the act is entitled "Rights and Remedies." Therein we find that subject to the right of the employer or employee, or both, to be exempted from the provisions of the act, every employer and employee, with stated exceptions, "shall be bound thereby, except as hereinafter provided, * * *." Section 2. Section 5 excludes from an employee subject to the act all other rights and remedies. Section 7 denies compensation to an employee guilty of misconduct, etc., thus relieving the employer from the binding effect of the act and within the clause "except as hereinafter provided." Section 13, now SDC 64.0302, provides as follows:

"No contract or agreement, express or implied, no rule, regulation, or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this act except as herein provided."

Part II is entitled "Compensation Schedule". Therein is found Section 24 which provides the amount of compensation "which shall be paid to the employee for an injury * * *". The two sections following relate to lump sum payments and provide the basis for computing compensation. We then find Section 27 as follows:

"The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility which the employer has assumed for injuries or death that may occur to employees in his employment subject to the provisions of this Act."

This section is now clarified and reenacted as SDC 64.0103.

Under Part III entitled "Administration" is Section 32, now SDC 64.0509, quoted in the majority opinion. Then follows Section 33 and other sections relating to the duties of the commissioner and a board in the event the employer and injured employee fail to reach "an agreement in regard to compensation under this act." Section 41 is identical with SDC 64.0609 and authorizes the commissioner at the request of either party to **end,** diminish or increase compensation payments if upon review **the commissioner** finds that the condition of the employee warrants such action.

Other provisions of the original enactment are not of particular aid as we endeavor to determine the legislative intent. Amendments to and codifications of the enactment afford no basis for a contention that the lawmaking body has sought to depart from the purpose and intendment reflected by and to be drawn from the first expressions of the law.

It must certainly be conceded that the purpose of the act is to provide compensation to the injured employee for known injuries within the range therein prescribed. The title of the act declares its aims to be the fixing of compensation for injured employees and the **securing** of the payment of such compensation. A careful study of the provisions of the original enactment and of the sections of our present code embracing said provisions leads me to the conclusions that the law is so framed and written as to provide and assure to the injured employee the amount of compensation as is by the law required to be paid for the injuries actually suffered and that there is no avenue through which employers who elect to operate under the law may escape any part of the specific liability thereby imposed.

In the case now before us Pulcifer sought in the trial court a judgment declaring it to be his right to apply to the commissioner for compensation the law says he shall receive for the permanent injury suffered. He had signed the two "final releases" as described in the majority opinion. The trial court found that plaintiff suffered a fracture of the radius at or near the left elbow joint and damage to the soft tissues in the vicinity thereof; that there is evidence from which the commissioner may find a permanent disability "which yould entitle him (Pulcifer) to an award of compensation for the resulting disability"; that the releases were for **temporary** disability payments equal to the amount plaintiff was entitled to receive for such disability, and that no payment of compensation had been made to plaintiff for permanent disability. Other findings by the court are against the plaintiff on the question of fraud on the part of defendants, or either of them, in procuring the releases and are to the effect that plaintiff signed the releases voluntarily and

with knowledge of the nature of the instrument he was signing. The last finding of the court is as follows: "He (Pulcifer) was, however, required to sign said release in order to get the check proffered to him." The full sum paid to plaintiff for total temporary disability was $110 covering a period of slightly more than seven weeks. In other words, the plaintiff was called upon to waive his right to compensation the law says he shall be paid for permanent disability in order to collect a few dollars the law says he shall receive for temporary disability. The position is now taken that the commissioner has approved this sort of a deal. To such position I cannot subscribe for the reason that the law does not permit the approval of such a waiver or release by the commissioner. Thus we face the question again before this court by this appeal, to-wit: Is the commissioner bound by the release signed by the injured employee if the latter has not received the benefits granted to him by law?

It should be here noted that there is no challenge by defendants to the findings of the trial court. Defendants' sole complaint respecting findings arises from the refusal of the court to adopt proposed finding number XV as follows:

"That said Exhibit 3 was a release in writing as required by SDC. 47.0240."

Exhibit 3 is the release last signed by plaintiff. Whether such proposal is a finding or a legal conclusion need not be discussed. It should be further observed that there is no finding by the court respecting the knowledge or lack of knowledge on the part of the employee regarding the extent of his injury. Nor is it found that Pulcifer signed the release as a result of a mistake by him or anyone else in estimating his disability. It may be fairly inferred, however, that the learned trial court considered the provisions of SDC 47.0241 in ruling that the releases did not bar the present claim and that Pulcifer had a right to a hearing thereon before the commissioner.

SDC 64.0509 clearly recognizes the right of the employer and employee to agree "in regard to the compensation" which agreement, if not disapproved by the commissioner, shall "be enforcible for all purposes under the provisions

of this title." If the parties fail to reach an agreement "in regard to compensation" (SDC 64.0603), the commissioner proceeds to a hearing and makes an award within the law for the known injuries. As pointed out above, these two sections were Sections 32 and 33 as enacted in 1917. The wording of SDC 64.0509 authorizes the commissioner to approve but one kind of an agreement, i. e., an agreement "in regard to the compensation under this title * * * enforcible for all purposes under the provisions of this title." An instrument which has for its object the termination of payments required by the law is not enforcible for the purposes of the law. The chief purpose of the law is to provide compensation to the injured employee whereas a release or waiver for less than the allowance by law ends or defeats such purpose in whole or in part.

This court has held that an agreement in regard to compensation, if not disapproved by the commissioner, takes the place of an award. Bailey v. Hess, 55 S. D. 602, 227 N. W. 69; Middleton v. City of Watertown, 70 S. D. 158, 16 N. W.2d 39; Salmon v. Denhardt Elevators, 72 S. D. 110, 30 N. W.2d 644. Obviously, a waiver or release is not "in regard to the compensation" but is a writing evincing a disposition to disregard the provisions of the law and to put an end to the rights and liabilities of the parties thereunder. In the instant case it sought to deprive Pulcifer of the allowance by law to him for the permanent disability suffered and the whole of such allowance.

Another important question is presented by the record in this case. On November 8, 1945, about two weeks after the date when plaintiff was injured, he and his employer entered into an agreement by the terms of which plaintiff was to "receive compensation at the rate of $15.00 per week * * * until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of South Dakota." Such an agreement was authorized by SDC 64.0509. It was in regard to compensation to be paid and was enforcible for the purposes of the law. It took the place of an award of weekly compensation by the commissioner and was binding upon the parties. If the employer

desired to terminate said agreement in accordance with the provisions of the law of this state his specific course of action is clearly set forth in SDC 64.0609. Thereunder the power to end compensation payments is vested in the commissioner. Thus the employee and his employer are removed from the field of hazardous guessing about the true condition of the injured man and it rests with the commissioner to review the case and to make such disposition thereof as the facts then brought to light may fairly warrant. When the employee has reached the end of the period of his total temporary disability, such change of condition of the injured man being brought to the attention of the commissioner, it then becomes the duties of the latter under the section last numbered to end the payments for such disability, to determine what, if any, incapacity or specific loss has been sustained by the employee and to award weekly compensation as provided by law for such loss or incapacity.

Under the facts of the present case as found by the court Pulcifer is or may be entitled to a very substantial part of fifty-five per centum of his average weekly wage during two hundred weeks. By agreement filed with the commissioner his average weekly wage is fixed at $40.25. By the provisions of SDC 64.0403(4) (s), and so finds the court, Pulcifer has a claim for partial permanent loss. The amount payable and due thereon is dependent upon the extent of permanent loss of use of the arm as may now be determined by the commissioner upon proper proof. The sum so determined is what the law of this state says Pulcifer shall receive. And it is the waiver of such a claim in whole or in part which I verily believe is expressly prohibited by SDC 64.0302.

An examination of statutes and code provisions in other states and the very numerous decisions based thereon compels me to the view that under our law an employer and his injured employee cannot enter into a valid final release unless the latter has received the compensation to which he is entitled by law for the injuries actually suffered. The authorities for this view are assembled and classified in extensive notes found in 165 A. L. R. 9, 153 A. L. R. 285 and

122 A. L. R. 550. From the reading thereof it will be readily observed that SDC 64.0302 precludes an agreement in the form of a release or waiver such as is here relied upon by the defendants. This is so particularly in view of SDC 64.0609 which makes it the express duty of the commissioner to **end** any payment to be made under the law if **he** finds that the "condition of the employee" warrants such action. The law of this state does not permit waivers, final releases and compromise settlements. Laws of other states differ from ours in this important respect.

It is argued by defendants that the release upon which they rely was an agreement within the meaning of SDC 64.0509 and that the provisions of said section were obviously contemplated as **the** exception to SDC 64.0302. My opinion is that the only agreement the commissioner may approve is one which recognizes the rights and obligations of the parties and is in regard to compensation to be paid in conformity with the purpose of the Workmen's Compensation Law. It should here be noted that within the clause, "except as herein provided", appearing at the end of SDC 64.0302, are the provisions of sections 64.0105, 64.0202, 64.0401, 64.0601, 64.0602, 64.0609 and 64.0611. Under each of these sections the employer may be relieved in whole or in part of his measure of responsibility as elsewhere established.

It is urged also that the wording of the release is of special significance and precludes a review of the employee's claim for compensation for permanent disability. The facts found by the trial court, not questioned by defendants, do not support this contention. The release recites that the payments were "the final payment of compensation under the South Dakota Workmen's Compensation Law and in consideration of which I hereby release," etc. The trial court, as noted above, found that the plaintiff received no compensation for permanent disability and that the payments to plaintiff, and for which the release was given, were but for temporary disability. If, as the court also found, there is evidence of permanent disability "which would entitle plaintiff to an award of compensation," the

payment made to plaintiff could not have been "final" under the Workmen's Compensation Law for that law specifically provides for compensation for permanent injuries and no payment of such compensation has been made to plaintiff. The specific finding is:

"That the plaintiff has been paid no compensation for the permanent partial loss of use of his left arm."

How can it be said that the payment was final under the law whereas the law says that plaintiff is entitled to specific compensation for the permanent disability suffered? There can be no final payment under the law until the injured employee is paid that sum which the law says he shall be paid for the injury sustained and the disability, if any, resulting therefrom.

It is my further view that the commissioner cannot become a party to any plan or scheme which would result in depriving him of his continuing jurisdiction under SDC 64.0609. Such a course of conduct would be contrary to public policy. It would result in an avoidance of the specific duties devolving upon him by law and would deny to the employer and employee, in all instances where a so-called final release had been signed as a result of a mistaken judgment respecting the extent of the injuries sustained, the right of review as by said section provided.

I am satisfied also that it was intended by SDC 64.0302 to prohibit agreements in the form of waivers or releases and thus avoid forcing employees into courts of equity for relief therefrom on the ground that there had been a mistake in fact rather than a mistake in judgment coupled with an attempt to surrender the rights assured by law to employees injured in the line of duty. I find nothing in the Workmen's Compensation Law to sustain the belief that the legislature intended to authorize a plan which would result in extended and expensive litigation because injured employees were "required to sign said release in order to get the check" for payments due them for temporary disability or because the commissioner may have failed to disapprove transactions about which he had little or no factual information.

Altogether consistent with the views above expressed are the provisions of SDC 64.0510 immediately following the section relating to agreements between employer and employee. Under section numbered as above, amended by Ch. 355, Laws of 1945, lump sum settlements may be ordered by the commissioner upon a petition "asking that such compensation be so paid" and if it appears to the commissioner to be to the best interests of the employee to so order. It cannot be seriously urged that weekly compensation may be lumped off by agreement between the parties contrary and without regard to the provisions of the present law. By such provisions the legislature denies to the employee the right even to ultimately decide what might be for his own best interests in regard to such a settlement.

Also consistent with the foregoing views, and within the excepting clause of SDC 64.0302, are the provisions of 64.0403(2) relating to compensation for disfigurement of hand, head or face. Said subsection (2) is, however, specifically limited to disfigurement and does not apply in cases where compensation is otherwise prescribed. In the absence of an incapacity, disability or loss for which the law makes an allowance it is left to the employer and employee to agree upon a sum for disfigurement of the parts mentioned, or any of them, as the law fails to fix and require payment of any specific amount of compensation for disfigurement alone.

If we adhere to the broad interpretation heretofore placed upon SDC 64.0509, with regard to final receipts and releases, we must read into the law the following:

The provisions of this act are subject to the right of the employer and employee to agree to compensation other than as herein provided. An instrument in writing evidencing such agreement, filed with the commissioner and not disapproved by him within twenty days after such filing, shall divest the parties to such agreement of all rights and benefits granted by theprovisions hereof.

If this is to be the law we must leave it to the legislature to so declare.

With respect to the continuing power of review and to **end**, diminish or increase payments to be made under our

law, as vested in the commissioner under SDC 64.0609, it is my opinion that the language of the New Jersey court in the case of Tucker v. Frank J. Beltramo, Inc., 117 N. J. L. 72, 186 A. 821, 825, expresses the intention of the legislature of this state. It is there stated:

"The scheme of these statutory provisions is to direct the original inquiry to the extent of the employee's injury and disability at the time of the rendition of the judgment, and to make that award subject to modification corresponding with an actual change in condition occurring thereafter. * * * · The genius of the provision is the correction of **injustice** consequent upon the inability of medical and surgical experts to make an accurate prognosis—to forecast with certainty the operation of nature's processes—and it is therefore an entirely reasonable and wholesome measure to effectuate the beneficial object of the statute, i. e., to **secure** to the injured employee the **prescribed** compensation for the disability **actually suffered.**" (Emphasis supplied).

Those interested in the questions here considered will find an abundance of good reading in the notes above cited and the statutes and decisions therein reviewed. See also Schneider's Workmen's Compensation Law, Second Edition, Vol. II, § § 500 and 501. On page 1668 is found the statement, suported by many authorities, as follows:

"An agreement between an employer and employee approved by the Industrial Board is good as far as it goes in complying with the act, and is given the same recognition as an award; but where it fails to provide compensation for permanent partial disability it is incomplete, and the board still has jurisdiction of the subject matter, even though the settlement was intended as a compromise settlement of all compensation, and may settle any other disputes in connection therewith."

Of further aid are the statements in 71 C. J., Workmen's Compensation Acts, § § 674, 687, 690 and 695 and notes appearing thereunder.

For the reasons stated I respectfully dissent from the views of the majority and agree with the ruling of the learned trial court.