DONALD W. SUTHERLAND'S (dependent's) CASE.

Suffolk.    October 18, 1973. — March 20, 1974.

Present: ROSE, KEVILLE, & GOODMAN, JJ.

*Workmen's Compensation Act,* What insurer liable.    *Proximate Cause.*

In a workmen's compensation case where it appeared that more than a year after the employee suffered an injury to his back at work he went to work for another employer, that nearly three and one-half years later he became disabled by a worsening condition of his back and permanently left work, and that some two months before so leaving work he had stumbled for several feet, the evidence, including expert medical testimony, warranted findings by the Industrial Accident Board that the stumble had only a "fleeting and temporary" effect on the trouble with his back, that he had never fully recovered from the injury thereto, and that the disability for which he permanently left work was causally related to the injury; and it was proper to award compensation for such disability against the insurer of the first employer and to dismiss a claim against the insurer of the second employer.    [59-62]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Kent B. Smith, J.*

*Paul A. Murphy* for American Motorists Insurance Company.

*Maurice F. Shaughnessy* (*Philander S. Ratzkoff* with him) for Employer's Liability Assurance Corporation Limited.

ROSE, J.   This case arises under the Massachusetts Workmen's Compensation Act.   It is before this court on an appeal by American Motorists Insurance Company (American) from a Superior Court decree which awarded

total incapacity and dependency compensation (to be paid by American) and dismissed a claim for such compensation against Employers' Liability Assurance Corporation, Ltd. (Employers' Liability).[1] With an exception noted in the last paragraph of this opinion, the Superior Court decree was in conformity with the decision of the reviewing board, which had affirmed and adopted as its own the findings and decision of the single member. We must therefore look to the single member's decision to determine whether the action of the board was correct. *Haley's Case,* 356 Mass. 678, 679-680 (1970). *Russo's Case,* 1 Mass. App. Ct. 206 (1973).

The findings of the single member may be summarized as follows. On January 30, 1962, while in the employ of a company insured by American, the employee injured his back. As a result of this injury, he underwent surgery and was paid total disability compensation by American from March 7, 1962, until May 5, 1963, when he went to work for Hyannis Marine Service (Hyannis), a firm which was insured by Employers' Liability. The employee had never fully recovered from his injury, however, and experienced gradually increasing pain and a restriction of normal movement in his back. On October 11, 1966, the employee again left work and never returned. The single member found that the employee's ultimate disability was directly related to his 1962 injury.

1. American concedes that, as stated in *Hacha-dourian's Case,* 340 Mass. 81, 85 (1959), and cases cited, "this court must sustain the findings of the board of review . . . unless they are wholly lacking in evidential support or tainted by error of law, and this is true even if different findings could have been made by the board," but argues that there was no evidence to support the

[1] The employee died on July 29, 1971, before the case had been heard by the reviewing board. No claim arising from the employee's death is before this court.

finding of a causal relationship between the employee's back injury and his ultimate disability. The evidence on this issue included the following. After his injury the employee was hospitalized and underwent a fusion operation on his spine. Following the operation he experienced recurring backaches. While working for Hyannis he experienced severe pain along his spine, wore a back brace, and was forced to take medication. The pain became progressively worse in the months before the employee left work permanently on October 11, 1966.

One Doctor Howard, an orthopedic specialist, testified that the employee's spinal fusion had broken down shortly after it was performed, resulting in a "fissure line" through the fusion. In the course of a 1968 examination, Doctor Howard discovered a fracture of the employee's first lumbar vertebra. He was of the opinion that the employee became susceptible to the fracture because of the development of osteoporosis, which was caused by inactivity, disuse and pain in his back following his injury. It was the opinion of Doctor Howard that the employee's ultimate disability "related to" his 1962 injury.

In light of the above summarized evidence, we cannot accept American's contention that the finding of a causal relationship between the employee's injury and his subsequent disability rested "merely on speculation and conjecture." Rather, we conclude that the challenged finding was amply supported by the record.

2. American also argues that the single member erred in dismissing a claim against Employers' Liability based on an incident which occurred in August, 1966, while the employee was working for Hyannis. Testimony was presented that the employee lost his balance while walking and stumbled for a distance of ten to fifteen feet. The single member found that although the stumble may have led to a temporary worsening of the employee's back pains, any such exacerbation was only "fleeting and temporary," and dismissed the employee's claim against Employers' Liability.

.

As regards the single member's interpretation of the law governing successive insurers, American states that "there is a doubt as to whether the . . . [single member] understood the fundamental rule that, given causal relationship, *however slight,* the last insurer is chargeable" (emphasis in the original). Although the single member's formulation of the rule[2] did not emphasize the minimal degree of causality which is needed to shift liability to a later insurer (see *Rock's Case,* 323 Mass. 428, 429 [1948]; *Fitzpatrick's Case,* 331 Mass. 298, 300 [1954]), we are of the opinion that it fairly summarized the applicable law for the purposes of this case. See *Trombetta's Case,* 1 Mass. App. Ct. 102, 104 (1973).

American also contends that the single member's findings are wholly lacking in evidential support. See *Hachadourian's Case, supra.* The evidence introduced in support of the findings was as follows. Although the employee's stumble left his ankle lame, nothing else bothered him at the time and he continued to perform laborious work every day until he finally left his job on October 11. In medical histories given to three physicians who examined him on or after that date, the employee linked his pain (and disability) once to an injury sustained while playing touch football, and once to his stumble, and on another occasion he said that he could recall no back injury at all subsequent to 1962.

Expert opinion concerning the effect of the stumbling incident on the employee's back condition varied considerably and was in any event within the province of the single member to accept or reject. See *Leonardi's Case,* 349 Mass. 771 (1965). The medical testimony that an aggravating injury would normally cause increased

---

[2] The single member's decision stated the Massachusetts rule to be as follows: "[T]he chargeability for the whole compensation to which the employee may be entitled . . . rests on the insurer covering the risk at the time of his most recent injury *that bears causal relation to the disability claimed*" (emphasis in the original).

back pain within a few days is significant in light of the employee's testimony that he felt no change in the condition of his back until one or two weeks after the stumbling incident.

We think that this evidence, considered in light of other evidence that the employee never recovered from his 1962 back injury and was suffering from gradually worsening pain in the months before he left work, supports the findings of the single member concerning the effect of the employee's stumble. See *Rock's Case, supra,* at 430; *Lambert's Case,* 325 Mass. 516, 518-519 (1950); *Casey's Case,* 353 Mass. 756 (1967).

As the result of an apparent typographical error in the final decree, the date as of which dependency compensation is reduced by reason of the death of the employee's wife reads "January 31, 1971," rather than January 31, 1970, which was the date fixed by the reviewing board. In all other respects, including the total amount of compensation to be paid, the decree is in conformity with the decision of the reviewing board. The decree is therefore to be modified by replacing the date January 31, 1971, wherever it appears, by January 31, 1970, and as so modified, is affirmed. Costs of appeal under G. L. c. 152, § 11A, are to be determined by a justice of this court.

*So ordered.*