NOVAK, Appellant v. GROSSENBURG & SON, et al., Respondents

(232 N.W.2d 463)
(File No. 11521. August 28, 1975)

J. W. Grieves, Winner, for claimant and appellant.

Acie W. Matthews, of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for C. J. Grossenburg & Son and Iowa Mut. Ins. Co.

J. B. Shultz, of Woods, Fuller, Shultz & Smith, Sioux Falls, for C. J. Grossenburg & Son and Federated Mut. Implement and Hardware Ins. Co.

J. M. Grossenburg, of Day & Grossenburg, Winner, for C. J. Grossenburg & Son and John Deere Ins. Co.

DUNN, Chief Justice.

The claimant, Frank Novak, filed a proper claim on June 12, 1972, seeking to recover further compensation under the Workmen's Compensation Act for an injury to his back which occurred on January 15, 1969, while in the employ of C. J. Grossenburg and Son's Shop (Grossenburg) of Winner, South Dakota. The Commissioner for the South Dakota Department of Labor and Management Relations (Commissioner) denied the claim on the grounds that the injury occurred in January 1969, and on December 11, 1969, the claimant signed a final receipt and release of Grossenburg and also of Federated Mutual Implement and Hardware Insurance Company (Federated), the employer's insurer at that time, which was filed with the Commissioner pursuant to SDCL 62-7-5 and after 20 days became final under that statute. The circuit court affirmed the Commissioner and the claimant has appealed to this court. We reverse.

The claimant began his employment with Grossenburg in 1957 and except for a period of eight months in 1958 when he

worked for the State Highway Department he had been employed steadily by Grossenburg up until March 17, 1972, the date of his disability.

On July 29, 1967, claimant injured his back in loading a baler while in the course of his employment. Iowa Mutual Insurance Company (Iowa Mutual), the employer's insurer at that time, paid medical expenses resulting from this injury and the claimant returned to work on September 2, 1967, with no loss of pay.

On January 15, 1969, claimant sustained a further injury to his back while lifting repair parts for a combine. This injury resulted in hospitalization and eventually in surgery when a laminectomy and diskectomy were done on February 6, 1969, by Dr. Jackson. Federated, which had been the employer's insurer since November 1, 1967, paid the medical expenses and compensation under the Act for this injury. On December 11, 1969, claimant signed a full receipt and release of Federated and of Grossenburg, which was duly filed with the Commissioner, for the injuries received from the January 15, 1969 accident.

Meanwhile, claimant returned to work on or about June 1, 1969, with the employer. He experienced great pain which became progressively worse, and the claimant was forced to quit work and seek hospitalization in March of 1972. During this period there was no further injury that could be pinpointed to a particular time and place. Dr. Jackson testified that claimant's condition was a "[p]rogressive phenomenon from the operation three years previously and the degeneration takes place gradually." At this time Dr. Jackson performed a spinal fusion on claimant's back which resulted in a permanent, partial disability of 20% of the back and 10% of the whole man. This present claim is for compensation for loss of time, medical expenses and for this permanent, partial disability.

Iowa Mutual declined payment on the grounds that the statute of limitations had run and for the further reason that it was not the insurer at the time of the most recent injury that bears a causal relation to the disability.

Federated refused to pay on the grounds of the statute of limitations and for the further reason that it held a full release from the claimant for the January 15, 1969 injury which was the most recent injury that bore a causal relation to the disability.

John Deere Insurance Company, employer's present insurer, declined to pay because their coverage did not begin until July 1, 1971.

We have been unable to find where South Dakota has passed on the question of the liability of successive insurance companies in Workmen's Compensation cases. 3 Larson's Workmen's Compensation Law, § 95.00 sets out two rules used in various jurisdictions:

> "When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation. In some jurisdictions apportionment has been worked out by judicial decision, or provided for by express statute, when events within the coverage periods of successive insurers contribute causally to the final disability."

The majority rule (Massachusetts-Michigan rule) provides that in successive injury cases full liability is placed upon the insurance carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability. *Rock's Case,* 1948, 323 Mass. 428, 82 N.E.2d 616, and *Brinkert v. Kalamazoo Vegetable Parchment Co.,* 1941, 297 Mich. 611, 298 N.W. 301.

In view of the difficulties that are inherent in apportionment and the inequity involved in holding a carrier partially liable when it was not on the risk, this majority rule seems to be the most logical and practical method of handling this type of case and we would adopt it in South Dakota.

Assuming for the moment that it was the January 15, 1969 accident that caused all of the successive injuries and present disability of the claimant, Federated would bear full liability

under this rule. There was never a clear finding by the Commissioner that the present disability was caused by the 1969 accident, although there is testimony, and especially medical testimony from Dr. Jackson, that the 1969 accident and resulting surgery caused the disability in 1972. The Commissioner did not make a finding either way on this point, presumably because his decision turned on the finality of the December 11, 1969 release.

We now turn to what seems to be the major issue in this case, and that is the validity of the final receipt and release of Federated and of Grossenburg, which was executed by the claimant on December 11, 1969, as it applies to the present disability. Actually, this release, if valid, would bar recovery from any carrier as it extends to the employer Grossenburg and his heirs and assigns.

Even though the Commissioner relied almost entirely on the release in his decision, and made the statement that the validity of the release was for the circuit court to decide, the court did not pass on this question. This may have been because the claimant did not challenge the validity of the release as is indicated by his brief and argument in this court.

The question of whether a later discovered disability for a compensable injury could reopen the claim in spite of a full release given on the basis of known injuries at the time of the signing of the release has not been clearly decided in this state. Does the release cover only the injuries and disabilities discoverable on December 11, 1969, when claimant signed the release, or does it extend to disability which is later discovered that is causally connected to the January 15, 1969 accident?

There is South Dakota authority on both sides of the question of the validity of a release in Workmen's Compensation cases. SDCL 62-3-18 provides as follows:

> *"Obligation created by title not waived by contract.*—No contract or agreement, express or implied, no rule, regulation, or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title except as herein provided."

This statute was interpreted in the case of *Vodopich v. Trojan Mining Co.*, 1921, 43 S.D. 540, 180 N.W. 965. There the claimant sprained an ankle while working for his employer. He received compensation under the Act from his employer and subsequently signed a complete release from further claims as a result of such injury. Later, however, complications developed as a result of the sprain and further medical attention was needed. Claimant moved to have the release set aside. This court ruled that the release should be set aside, even though the claimant could show no fraud or misrepresentation in the procurement of the release. The court quoted the above statute from the Code of 1919 and then stated:

> "We are of the opinion that it is the plain intent of the Workmen's Compensation law that, while fraud or misrepresentation in obtaining the release would be a ground for setting it aside, yet an injured employee is not required to establish the fact that an agreement for release of further liability was entered into by reason of the fraud or misrepresentation of the employer before he can have the cause reopened. Where such an agreement is signed and approved by the Industrial Commissioner under the provisions of section 9467, Rev.Code 1919, equitable grounds for setting aside the release must be established before the cause can be reopened. *Foley v. Detroit United Ry.*, 190 Mich. 507, 157 N.W. 45. If in this case the employee believed the results of the sprain were ended at the time he signed the release, but it afterwards developed that further pain and suffering were attributable to the sprain, that would justify the reopening of the case. Bradbury, Workmen's Compensation (3d Ed.) pp. 1137-1149." 43 S.D. at 545-546, 180 N.W. at 966.

In the present case, claimant Novak not only had further pain and suffering, but there is evidence that he suffered from a degeneration of the vertebrae in his back as a result of his accident. This resulted in the 1972 operation which fused his vertebrae and caused at least a partial disability. On the strength of *Vodopich v. Trojan Mining Co.*, supra, the present case should be reopened since the total consequences of the 1969 accident

were not discoverable at the time the release was signed on December 11, 1969.

This court distinguished Vodopich, however, in the case of *Chittenden v. Jarvis*, 1941, 68 S.D. 5, 297 N.W. 787. There the claimant was injured and an agreement was signed and approved by the Industrial Commissioner entitling the claimant to $12.69 per week. The claimant then signed a final receipt and release. Claimant later sought to have the Commissioner reopen the case on the grounds that the employer had made oral promises of additional compensation at the time the written agreement was signed which he had not carried out. The court distinguished the case from Vodopich. It said that the release in this case had been filed with the Commissioner while the release in Vodopich had not been filed. The court refused to allow the Commissioner to review the case. The court relied heavily upon SDC 64.0509 which is the same as the present SDCL 62-7-5 which reads as follows:

> *"Agreement as to compensation—Approval by commissioner.*—If the employer and employee reach an agreement in regard to the compensation under this title, a memorandum thereof shall be filed with the commissioner by the employer or employee, and unless the commissioner shall, within twenty days, notify the employer and employee of his disapproval of the agreement by registered or certified letter sent to their addresses as given in the memorandum filed, the agreement shall stand as approved and be enforceable for all purposes under the provisions of this title."

The major distinction the court made then is that a release is valid if filed with the Industrial Commissioner (now the Department of Labor and Management Relations), but may be set aside if it is not filed. This seems to be a specious distinction. Agreements and releases for Workmen's Compensation which did not contemplate subsequent treatment for a disability caused by an injury should not be treated differently because in one case the release was filed and in the second case it was not. The important fact in both cases was that there were consequences directly resulting from the initial injury which were not contemplated by

the parties when the agreement and release was signed and were not discoverable until sometime later.

■ Moreover, SDCL 62-7-5 on its face does not preclude setting aside a release if later consequences are discovered. It speaks in terms of "an agreement in regard to the compensation under this title." This may or may not include a final receipt and release signed by the employee. Further, it says that the agreement is enforceable if approved, but is not binding for all time on the parties. This has to be true by the very fact that SDCL 62-7-33 states:

> "*Review of payment by commissioner.*—Any payment to be made under this title may be reviewed by the commissioner at the request of the employer or of the employee and on such review it may be ended, diminished, or increased subject to the maximum or minimum amounts provided for in this title, if the commissioner finds *the condition of the employee* warrants such action." (emphasis supplied)

In Chittenden, the court in discussing the above act stated:

> "This statute does not confer a jurisdiction on the Commissioner to reopen and review an award on the same or substantially the same facts as those appearing on the original hearing or to correct errors made in fixing the amount of the original award. It has reference to conditions different from that when the award was made; the modification is dependent upon a change in the condition of the employee since the last award. *Estate of Beckwith v. Spooner*, 183 Mich. 323, 149 N.W. 971, Ann.Cas.1916E, 886; *Bell v. State Compensation Commissioner*, 113 W.Va. 571; 169 S.E. 162 (additional citations omitted)." 68 S.D. at 9, 297 N.W. at 789.

However, after this language, which is based on sound logic and precedent, the court concluded that the statute

> "contemplates the existence of continuing payments. An award based either on an adjudication or an agreement,

which has been satisfied by payment, cannot thereafter be reopened and reviewed because of change of condition." 68 S.D. at 9, 297 N.W. at 789.

This language does not apply to the facts in the Chittenden case as the claim there was not a change in condition, but rather for a mistake of law in figuring the original compensation to the claimant for which he signed a final release. This dicta in the Chittenden case, which would seem to also bar recovery for a later discovered disability from an injury for which a claimant had signed a final release and receipt duly filed with the Commissioner, is overruled. We would hold that since there is no statutory mandate against setting aside a release where consequences of an injury were not discoverable until sometime in the future there can be a review by the Commissioner of the award in view of the newly discovered disability. *Vodopich v. Trojan Mining Co.*, 1921, 43 S.D. 540, 180 N.W. 965.

This holding is also in accord with the public policy exhibited by the Workmen's Compensation Act. The disability discovered in 1972 by the claimant is a permanent, partial disability. The settlement and release made no mention of or provision for compensation for a permanent, partial disability. 101 C.J.S. Workmen's Compensation § 899 states:

"The generally accepted rule is that where compensation has been paid and the award approved and the case closed, it may still be reopened on the grounds of a change in the employee's condition, where the question of the permanency of the injuries was not considered in the settlement; and a final receipt or a release will not preclude a review on such grounds; not even, it has been held, where the receipt recites that the disability has ceased."

■ Once the problem of the final receipt and release in this case is dealt with, the next question is whether claimant's recovery would be barred by the statute of limitations. At that time SDCL 62-7-35 had a one-year statute of limitations for claims under the Act. The record shows that claimant Novak made a timely claim for his immediate injuries as a result of the

January 15, 1969 accident. This being the case, this claim tolled the statute of limitations for this injury. The claimant's most recent claim was simply a review of his original claim seeking more compensation for the disability caused by the 1969 accident. The accident had already been reported to the employer, the insurance company and the Department of Labor and Management Relations in 1969. Therefore, the statute of limitations did not expire. This court has previously stated the reason for the statute of limitations in Workmen's Compensation cases: "The purpose of requiring a claim for compensation to be filed by an injured employee, like notice of injury, is to protect employers against stale claims which cannot be promptly investigated." *Tegels v. Western Chevrolet Co.*, 1965, 81 S.D. 592, 596, 139 N.W.2d 281, 283. Neither the employer nor the insurance company in this case suffered from the disability of a stale claim. Novak's claim was reported in 1969 and an investigation must have been conducted because the employer and its insurance company assumed liability.

As indicated above, this release and the statute of limitations were not considered by the trial court in its decision and the cause must be remanded to the circuit court for a decision on these questions in accordance with the guidelines set out herein. Also, the Commissioner did not make a finding on whether the present disability resulted from the January 15, 1969 injury. Federated has had no clear opportunity to brief and argue either of these questions on the present record. Therefore, this case is reversed and remanded to the circuit court for appropriate proceedings not inconsistent with this opinion.

WINANS and DOYLE, JJ., concur.

WOLLMAN and COLER, JJ., dissent.

WOLLMAN, Justice (dissenting).

I do not believe that we can reach the question of the validity of the 1969 release, given the procedural posture of this case. Claimant at no time has attempted to attack the validity of the release. There is nothing in his petition, his proposed findings of fact and conclusions of law, his assignment of errors, his brief

or his oral argument before this court that in any way indicates that claimant seeks relief from the 1969 release. Indeed, claimant himself acknowledges that he has not challenged the validity of the 1969 release with respect to the January 15, 1969 injury. Brief for claimant at 5. My notes taken at oral argument indicate that claimant's counsel stated during his rebuttal argument that the release is irrelevant under claimant's theory of recovery. Small wonder then that Federated Mutual filed a brief stating that because no issue had been raised as to liability on its part and because no record had been made on appeal that would justify or make possible a responsive brief on its part, it was not an interested party to this appeal.

Issues may not be presented for the first time on appeal, *In Re Estate of Grimes,* 87 S.D. 187, 204 N.W.2d 812; *Chipperfield v. Woessner,* 84 S.D. 13, 166 N.W.2d 727; *Fales v. Kaupp,* 83 S.D. 487, 161 N.W.2d 855; cf. *Kraft v. Kolberg Mfg. Co.,* 88 S.D. 140, 215 N.W.2d 844. *A fortiori,* issues presented neither to the lower court nor to this court should not be decided on our own motion.

As I understand it, claimant's theory of recovery is that he is suffering from a diseased back as a result of the 1969 injury and that this disease first manifested itself during the period in which John Deere Insurance Company provided coverage, with the result that John Deere Insurance Company should be held liable for workmen's compensation benefits. Given the record made by claimant, I would affirm the circuit court's decision that affirmed the deputy commissioner's conclusion that claimant had failed to sustain his burden of proof that his present disability and condition is a disease resulting from injury in accordance with SDCL 62-1-1(2). Had claimant proceeded on the theory that he had suffered an injury by accident during the period subsequent to July 1, 1971, the date John Deere Insurance Company's coverage became effective, I would have been inclined to take a close look at our holding in *Tegels v. Western Chevrolet Co.,* 81 S.D. 592, 139 N.W.2d 281, and perhaps adopt the more liberal rule espoused by the dissenting opinion in that case. I note that the Legislature has deleted the words "by accident" from SDCL 62-1-1(2). Ch. 322, § 1 Laws of 1975.

On the record before us, I would affirm.

COLER, Justice (dissenting).

I agree with Justice Wollman that we should affirm. The validity of the release was not raised by the pleading; no evidence was produced to support such a claim and it was neither briefed nor argued. On page 5 of the appellant's brief this statement appears: "The claimant has not challenged the validity of this release    *    *    *."

It may be that in the future, with the words "by accident" removed from SDCL 62-1-1(2), that the claimant would have a valid claim. Further, as Justice Wollman's dissent points out, to sustain claimant's theory in this case would require this court to give retroactive effect to the 1975 amendment to SDCL 62-1-1(2).

Of equal significance, I believe, is that the opinion, in overruling the dicta in *Chittenden v. Jarvis,* 1941, 68 S.D. 5, 297 N.W. 787, which may be desirable, does not go far enough but merely implies that the commissioner should have set aside the release or is empowered to do so. If this is to be done sua sponte, why not go all the way and grant the commissioner equity powers to set aside the release, a la dissent of Judge Hayes in *Pulcifer v. Carlson Builders,* 1948, 72 S.D. 130, 31 N.W.2d 239, and thereby overrule *Chittenden, Pulcifer, Nilsson v. Krueger,* 1941, 68 S.D. 11, 297 N.W. 790, and any other prior decision that implies that the exercise of equity powers rests solely with the court and is not impliedly vested in the commissioner? As it stands now the commissioner, as he found in this case, cannot delve into the question of the validity of a release and, as Judge Hayes points out in Pulcifer, a separate lawsuit is necessitated, constituting both waste and risk of loss of jurisdiction by the commissioner. [1]

Further, I do not agree that we are in any way justified in adopting the so-called Massachusetts-Michigan rule on successive injury. We should look to our own law on the subject. I think by adopting the so-called majority rule, which is not the majority rule but the subject of statutory provisions varying from state to

---

1.   This disposition would not be an unreasonable extension of the holding of this court in *Vodopich v. Trojan Mining Co.,* 43 S.D. at p. 547, 180 N.W. at p. 967. See annotations following SDCL 62-7-33.

state, we ignore the plain mandate of SDCL 62-4-29. It appears to me that this statute authorizes the department to prorate the loss among carriers in cases such as the one at bar. I would not foreclose its further use barring direct challenge.

Other states have found no great difficulty in apportioning the loss among insurers (See Note 23, 3 Larson's Workmen's Compensation Law, § 95.31) and the application of SDCL 62-4-29 should be no more agonizing than the application of our comparative negligence statute, SDCL 20-9-2. Further, the legislature has materially changed the second injury fund coverage under SDCL 62-4-34 to protect employers and insurers in an attempt to reduce harsh consequences such as those created by the majority opinion. Ch. 322, § 6, S.L.1975.

The statement in the majority opinion that the Massachusetts-Michigan "harsh rule," 3 Larson's Workmen's Compensation Law, § 95.31, is the majority rule, and by implication, that the rule of those states is established by force of decision is incorrect. I submit that the quotation from 3 Larson's Workmen's Compensation Law, § 95.00, which is an oversimplified "restatement," does not support that proposition nor does his subsequent text. As a practical matter the Michigan rule stemmed from a decision of the Michigan court in *Brinkert v. Kalamazoo Vegetable Parchment Co.*, 1941, 297 Mich. 611, 298 N.W. 301, and is cited by Larson as his authority. That case relied on Massachusetts decisions, namely, *Evans Case*, 299 Mass. 435, 13 N.E.2d 27 and *Falcione's Case*, 305 Mass. 433, 26 N.E.2d 308. The Michigan court did not rely on the *Rock's Case*, 1948, 323 Mass. 428, 82 N.E.2d 616, the Massachusetts case which Larson cites in Note 64 under § 95.11, as holding the first insurer liable, contrary to the statement in the majority opinion. The Rock's Case hinged on the issue of independent intervening force which became operative without relation to the previous injury as did the Michigan case cited. Under circumstances falling within this test the employer last in line was liable.

The Michigan legislature reacted to this harsh rule by enacting an apportionment statute, C.L.1948, § 417.9, Mich. Stats.Ann. 1960 Rev. § 17.228. After the statute was declared unconstitutional in *Benton Harbor Malleable Ind. v. General*

*Motors Corp.*, 1960, 358 Mich. 684, 101 N.W.2d 281, and *Trellsite Foundry & Stamping Co. v. Enterprise Foundry*, 1961, 365 Mich. 209, 112 N.W.2d 476, the legislature attempted to amend that provision to meet the court's objections and apparently had done so. See 3 Larson's Workmen's Compensation Law, § 95.32, p. 508.162. It appears, however, that the legislature gave up the fight and their present statute[2] parallels somewhat the prior court rule. It is the statute, however, which now controls in Michigan as should SDCL 62-4-29 in this case.

Massachusetts, subsequent to the Rock's Case, on the other hand, enacted provisions relative to compensation for subsequent injuries whether or not they were in the same employ.[3]

I feel the significance of the decisions from other states is lost in this case when you consider that depending upon whether the

2. Michigan Statutes Annotated § 17.237(301) in part reads as follows:

"Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death."

3. M.G.L.A. c. 152 § 35B. *Compensation Payments for Subsequent Injuries.*

An employee who has been receiving compensation under this chapter and who has returned to work for a period of not less than two months shall, if he is subsequently injured and receives compensation, be paid such compensation at the rate in effect at the time of the subsequent injury whether or not such subsequent injury is determined to be a recurrence of the former injury; provided, that if compensation for the old injury was paid in a lump sum, he shall not receive compensation unless the subsequent claim is determined to be a new injury. 4—C Mass. 1974 Supp.

In a recent case, *In Re Sutherland's Case*, 1974, Mass.App., 308 N.E.2d 775, the court sustained that portion of the reviewing board's determination that allowed recovery by relating back to the first injury which I read as consistent with Rock's Case but inconsistent with the Massachusetts cases used by Michigan in support of their decision. The Massachusetts court ratified the review board member's decision to the effect that:

" '[T]he chargeability for the whole compensation to which the employee may be entitled . . . rests on the insurer covering the risk at the time of his most recent injury *that bears causal relation to the disability claimed*' (emphasis in the original)." *In Re Sutherland's Case*, 1974, Mass.App., 308 N.E.2d 775.

They cite in support of that statement an earlier case, *Trombetta's Case*, 1973, Mass.App., 294 N.E.2d 484.

injury relates back to the 1967 injury or is found to be an independent nonrelated injury in 1969 or, in the alternative, is found to be a continuing or progressing injury, the law governs, not decisions of this or some other court. The concern of the commissioner under our law must be to determine the date of injury, for the amount of the claimant's award for compensation would be different if the injury occurred after July 1, 1969, under SDCL 62-4-6(21), as enacted by Ch. 287, § 1, S.L.1969, than it would have previously been under SDCL 62-4-5. The majority opinion offers no guidance to the commissioner considering the theory advanced by the claimant.

If we are willing that the commissioner have equity power to set aside the release we should so hold. Absent such a holding I would affirm.