MEYER, et al., Respondents, v. ROETTELE, et al., Appellants

(264 N. W. 191.)

(File No. 7818.   Opinion filed December 21, 1935.)

*Tom Kirby* and *Hans Hanson,* both of Sioux Falls, for Appellants.

*J. G. McFarland* and *K. C. Paterson,* both of Watertown, for Respondents.

ROBERTS, J.  This is a claim made by the parents of Maurice Meyer against Elmer Roettele, employer, and the Western Surety Company, insurer, under the provisions of the Workmen's Compensation Act (Rev. Code 1919, § 9398 et seq.) for compensation for the death of their son.  The matter came on for hearing before the industrial commissioner on November 25, 1932, acting in lieu of the board of arbitration.  The commissioner denied compensation, holding in effect that death was not caused by accidental injury arising out of and in the course of employment.  Plaintiffs petitioned for a review, and the industrial commissioner on reconsideration of the evidence found that defendant Roettele was engaged in operating a threshing machine, and in the crew employed by him was the decedent, who was paid daily wages and in addition thereto was furnished board; that at the noon hour on August 1, 1932, Maurice Meyer and others partook of a meal at the house of John Knoll for whom Roettele was then threshing; that the meal was furnished under an arrangement made by and with the operator of the threshing machine; that at this meal Maurice Meyer ingested a toxin produced by a germ called bacillus botulinus, and from the effects of this toxin Meyer died on August 4, 1932. The commissioner, concluding that deceased had suffered an accidental injury arising out of and in the course of his employment, made an award which was affirmed by the circuit court.  Defendants have appealed.

Defendants contend that the evidence conclusively shows that decedent was a victim of a disease which did not result from an accidental injury.  The opinion of attending physicians established beyond question that Meyer's illness was the result of food poisoning called botulism.  Dr. Karlins, a witness for the plaintiffs, testified: "I treated Meyer in the month of August, 1932. * * * In my opinion the death of Maurice Meyer was due to botulinus poisoning. * * * This type of poison is a toxin produced by a germ called the bacillus botulinus.  The poison is elaborated by this germ and the usual source is food—usually preserved or canned food.

The bacillus is what we call an anaerobe; that is it lives better under conditions in which there is no free oxygen and it lives by taking the oxygen out of some other substance. It produces this poison or toxin and it is the toxin that produces these symptoms. It is not the germ itself. It is the toxin that has been made in the food and is eaten and absorbed by the body, and its specific action is paralysis of certain nerves in the body. * * * The poison comes from the outside into the body just the same as a snake bite and there would be that difference in which it would not be the same as a typhoid bacilli working upon the body and creating the poison in the body. In other words the typhoid or cases of disease of that type the bacilli enter the body in some substance and then proceed to act on the body; whereas in this case the poison enters the body from the outside and acts immediately upon the body. * * * This term (botulism) is considered a food intoxication by most medical authorities. It is classified as a disease. It has definite symptoms, and runs a definite course and is caused by a definite bacilli. In that way it is no different from any other disease." Dr. Pfister, also a witness for the plaintiffs, testified: "In my opinion, from my examination of Maurice Meyer, the direct, immediate and sole cause of his death was botulism. This is a condition whereby the body is attacked with a toxin or poison manufactured by the bacillus botulinus and taken into the body. The bacilli themselves are not the poison. The fact that the bacilli enter the body would not cause botulism but the poison created by the action of the bacilli is what injures the body. The poison particularly attacks the nerve filaments."

■ The Workmen's Compensation Act provides compensation "for personal injury or death by accident arising out of and in the course of employment." Section 9437, R. C. 1919. The statutory definition of "personal injury" specifically excludes "a disease in any form except as it shall result from the injury." Section 9490, R. C. 1919. The original Workmen's Compensation Law, enacted in England in 1897, provided for compensation for "injury by accident," and the compensation acts of most states contain the same language or phraseology to the effect that the injury must be of an accidental nature or origin. In the case of Fenton v. Thorley, [1903] A. C. 443, the question arose as to the meaning of the word "accidental." It was held that this word was used in the

popular and ordinary sense as denoting an unlooked for and untoward event which is not expected or designed. In a subsequent case, Brintons v. Turvey, [1905] A. C. 230, 2 Ann. Cas. 137, a workman who contracted anthrax while engaged in handling wool in the course of his employment sought compensation. Referring to its former decision as authority for the meaning to be given the word "accident," the court sustained right of recovery. Under this decision a disease of sudden origin contracted in the course of employment may constitute an injury by accident. In the opinion of Lord Macnaghten, it was said: "It was an accident that the noxious thing that settled on the man's face happened to be present in the materials which he was engaged in sorting. It was an accident that this noxious thing escaped the down draught or suck of the fan which the Board of Trade, as we are told, requires to be in use while work is going on in such a factory as that where the man was employed. It was an accident that the thing struck the man on a delicate and tender spot in the corner of his eye. It must have been through some accident that the poison found entrance into the man's system. * * * I cannot doubt that the man's death was attributable to personal injury by accident arising out of, and in the course of, his employment. The accidental character of the injury is not, I think, removed or displaced by the fact that like many other accidental injuries, it set up a well-known disease, which was immediately the cause of death."

It was stated in these cases that it is not every disease contracted in the course of employment that is to be regarded as an injury by accident.

It is the contention of counsel for appellants that the right to compensation for disease exists only where disease is produced or aggravated by an injury which is caused by an unexpected event, and in support of this contention counsel urge that the phrase "injury by accident" is to be given a meaning which would confine its application to instances where the cause of the injury was accidental. We are cited to the case of Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P. (2d) 1017, 1020. The Arizona court is of the view that the construction of the words "injury by accident" in the case of Fenton v. Thorley, supra, is too broad. Referring to that decision it is asserted that the court "failed appar-

ently to see that the only possible effect of the use of the words 'injured by' in the phrase is to establish that the accident referred to therein is the cause and not the effect. The injury referred to is obviously a result." The Workmen's Compensation Act is remedial and should be liberally construed to effectuate its purpose. In most jurisdictions where accident is the test of compensability, the broader interpretation in harmony with English decisions has been adopted. See Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 44 A. L. R. 363; 25 Harv. L. Rev. 328. Mindful of the interpretation of the original act and the rule of liberal construction, this court has held that the phrase above referred to is to be given the broader interpretation. Johnson v. LaBolt Oil Co. 62 S. D. 391, 252 N. W. 869.

In the case of Connelly v. Hunt Furniture Co., 240 N. Y. 83, 147 N. E. 366, 39 A. L. R. 867, defense was made that there was no injury by accident. In the determination of the question under a statute which includes "such disease or infection as may naturally and unavoidably result" from accidental injury, the court, speaking through Judge Cardozo, said: "We attempt no scientifically exact discrimination between accident and disease, or between disease and injury. None perhaps is possible, for the two concepts are not always exclusive, the one of the other, but often overlap. The tests to be applied are those of common understanding as revealed in common speech. Lewis v. Ocean Acci. & Guarantee Corp., 224 N. Y. 18, 21, 120 N. E. 56, 7 A. L. R. 1129; cf. Van Vechten v. American Eagle Fire Ins. Co., 239 N. Y. 303, 307, 146 N. E. 432 [38 A. L. R. 1115]. We have little doubt that common understanding would envisage this mishap as an accident, and that common speech would so describe it. * * * Sunstroke, strictly speaking, is a disease, but the suddenness of its approach and its catastrophic nature have caused it to be classified as an accident. Ismay, I & Co. v. Williamson, [1908] A. C. 437, 441; Gallagher v. Fidelity & C. Co., 163 App. Div. 556, 148 N. Y. S. 1016; Id., 221 N. Y. 664, 117 N. E. 1067; Murray v. H. P. Cummings Const. Co., 232 N. Y. 507, 134 N. E. 549. Tuberculosis is a disease, yet, if it results from the sudden inhalation of poisonous fumes, it may be an accident. O'Dell v. Adirondack Electric Power Co., 223 N. Y. 686, 119 N. E. 1063. A like ruling has been made where some extreme

and exceptional exposure has induced pneumonia or rheumatism. Coyle v. Watson, [1915] A. C. 1; Glasgow Coal Co. v. Welch, [1916] 2 A. C. 1, 10 [10 B. R. C. 308, Ann. Cas. 1916E, 161]."

We are of the view that a disease may be an "injury by accident" within the meaning of our statute. The exclusion is of any disease which is not an accidental injury or which does not result from such injury. It is generally recognized that accident as contemplated by the Workmen's Compensation Law is distinguished from so-called occupational diseases which are the natural and reasonably to be expected result of workmen following certain occupations for a considerable period of time. On the other hand, if the element of suddenness or precipitancy is present and the disease is not the ordinary or reasonably to be anticipated result of pursuing an occupation, it may be regarded as an injury by accident and compensable. The general subject is reviewed and a number of cases are cited in a note found in L. R. A. 1916A, 289. The case of Edge v. City of Pierre, 59 S. D. 193, 239 N. W. 191, 193, relied on by appellants, is not opposed to this interpretation. Compensation in that case was denied to a surviving dependent of a deceased workman. The question determined was that the evidence as to the connection between an injury and subsequent disease did not warrant disturbing the industrial commissioner's finding adverse to claimant. Referring to the statutory definition of injury, this court said: "Before compensation can be allowed for disability or death by disease, it must be established that the disease was proximately caused by the accident." The determination was not that a disease may not be considered an injury by accident, but that the disease which supervened after the injury was not proximately caused by the accident from which the deceased sustained an injury.

Medical testimony was to the effect that the poisoning and ensuing death were caused by a toxin created by the action of bacilli upon the food before it was eaten. There is no substantial distinction between the consuming of this poisonous food and chemical poisoning or the drinking of a virulent poison by mistake. See Krause v. Swartwood, 174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611. The inception of the disease under the evidence in the instant case is attributable to the unexpected and undesigned oc-

currence of the presence of the poisonous toxin and is assignable to a definite time, place, and circumstance. In our opinion death was the result of an accidental injury.

Nor can the contention that the accident did not arise out of and in the course of the employment be sustained. The mere fact that an employee is not actually engaged at his work at the time of injury does not as a matter of law relieve the employer. Under the terms of employment board was furnished. Decedent was where his employer directed him to be, and, although the partaking of food was personal in character, nevertheless it was so incidental to his employment that the accident did arise out of and in the course of employment. Vennen v. New Dells Lbr. Co., 161 Wis. 370, 154 N. W. 640, L. R. A. 1916A, 273, Ann. Cas. 1918B, 293; Archibald v. Workmen's Compensation Commissioner, 77 W. Va. 448, 87 S. E. 791, L. R. A. 1916D, 1013; Gilliland v. Edgar Zinc Co., 112 Kan. 39, 209 P. 658, 29 A. L. R. 431; Krause v. Swartwood, supra; Wasmuth-Endicott Co. v. Karst, 77 Ind. App. 279, 133 N. E. 609.

The amount awarded as compensation was computed upon the basis of earnings under subdivision 3, § 9461, Revised Code 1919, which provides that compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location have earned during the year if the injured person has not been engaged in the employment of the same person during such period. It is the contention of counsel for appellants that the computation should have been made upon the basis of earnings under subdivision 5 of the same section, which reads as follows: "As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determined, shall be used instead of three hundred as a basis for computing the annual earnings; provided, that the minimum number of days which shall be so used for the basis of the year's work shall be not less than two hundred."

The employment by Roettele in his threshing operations was seasonal and not continuous throughout the year. The computation should have been made under the provisions of subdivision 5 and not on the basis of combined earnings. Smith v. Utah-Idaho Sugar Co. 63 S. D. 45, 256 N. W. 261.

The award is excessive to the extent of $600. The judgment appealed from is therefore reversed, and the clause remanded to the trial court, with directions to enter judgment in conformity with this opinion. No costs will be taxed in this court.

All the Judges concur.