**W. HORACE WILLIAMS COMPANY, Inc., and EMPLOYERS' GROUP INSURANCE COMPANIES, Appellants,**

**v.**

**Andrew J. SERPAS, Appellee.**

**No. 17322.**

United States Court of Appeals Fifth Circuit.

Jan. 5, 1959.

Rehearing Denied Feb. 11, 1959.

Marian Mayer, Frank J. Peragine, of Deutsch, Kerrigan & Stiles, New Orleans, La., for appellants.

Joseph J. Laura, Jr., of Laura, Danna & Simmons, New Orleans, La., for appellee.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment by the trial court, sitting without a jury, awarding appellee compensation for total and permanent disability under the Louisiana Workmen's Compensation Law, LSA-R.S. 23:1021 et seq.. The occurrence of the accident is admitted. Only the degree of permanence and disability are in issue.

Appellee was a carpenter by trade. He had been engaged generally in heavy carpentry work, being able to perform satisfactorily on industrial work involving the handling of heavy materials and frequent climbing and lifting. He suf-

fered a back sprain in 1951, but lost no time from work. In January, 1956, he suffered an injury when fellow employees left him suddenly with too heavy a lift. He reported to the company physician who taped his back and sent him to an orthopedic specialist and X-rays were taken. It was discovered that he had congenital spondylolisthesis, a condition in which one vertebra has slipped over another so that there is no direct column of bony structure to support the back wall. His injury was diagnosed as a mild lumbosacral strain. Appellant concedes that this strain may be considered as aggravation of appellee's predisposition to attacks of lumbosacral strain. Appellant states: "The question is simply the duration of the aggravation."

Appellee testified that he had had pain continuously from the time of the accident down to date of trial; such pain resulted from efforts by him to bend, or twist, or lift, or climb or place too great weight on his left leg; he got relief from wearing a sacro-iliac brace prescribed by his doctor, which he wore every day at his work; he had been restricted in his work in that he could no longer do heavy carpentry and was thus not able to join the Union pool, but had to take lighter carpentry work which paid a lower hourly wage; his present wage rate was $2.00 an hour as against the former pay scale of $2.70 received by him.

Appellee returned to work approximately two weeks after the injury but he continued to get treatments until August, 1956, although the physician, the orthopedic surgeon and a neurosurgeon all reported that the lumbosacral strain had cleared up in March, at which time compensation payments were terminated. On June 12, 1957, appellee entered Charity Hospital for other trouble and his back was examined. The clinical report then was negative. On September 25, 1957, the trial court chose a medical expert who reported no objective evidence of strain or disability, but who recommended that an orthopedist be consulted.

This was done and on December 5, 1957, Dr. Orofino made his examination, resulting in the report that became the basis of the trial court's finding in favor of Serpas.

Numerous lay witnesses, including Mrs. Serpas, testified to the employee's apparent pain and disability, as indicated by limitations on his ability to work (1) on the job, (2) around the yard, and (3) in the house.

To counteract this testimony appellant introduced moving pictures taken on two widely spaced occasions, January and August, 1957. These pictures, also viewed by this Court, showed appellee engaged in physical labor as a carpenter in which he moved about, bent over, lifted boards and climbed into what appeared as an attic, and worked in a crouching position with apparent agility.

Undoubtedly the evidence given in open court by two of the physicians, one an impartial medical witness chosen by the court, and the medical reports of two others, admitted by stipulation, would have warranted a finding by the trial court that the injury of January, 1956, was completely cured by August, 1956. Such a finding would also be supported by the pictures showing the physical activity of the appellee. However, the report of Dr. Orofino, also an impartial court appointed witness, concluded that whereas Serpas' congenital spondylolisthesis had previously been "asymptomatic," as a result of this injury "the congenital defect in Mr. Serpas' low back has become symptomatic." He then recommended: "I feel that Mr. Serpas will, in all probability, benefit by a fusion of the 4th lumbar vertebra to the 1st sacral vertebra. This feeling is reinforced by the fact that Mr. Serpas obtains relief from the minimal amount of immobilization achieved by a sacro-iliac belt."

Appellant here contends that Dr. Orofino's opinion was based on subjective rather than objective tests, since he testified that he concluded the injury caused

his present difficulty "from the patient's history."[1]

On cross examination Dr. Orofino testified that the patient's history was the main consideration in arriving at his conclusion. Appellant thus takes the position that the opinion is without evidentiary value because "based on appellee's self-serving and inaccurate history."

We are unable to determine exactly what history was given to Dr. Orofino to form the basis of his opinion other than as stated in his report, admitted in evidence, and as stated by him under cross examination. In his report he stated: "His history of illness and treatment, as the result of his injury in February, 1956, has been reviewed and is essentially as reported to you in Dr. Kirgis' letter of July 27, 1956." (Dr. Kirgis' letter is not in evidence, although there is a stipulation to the effect that Dr. Kirgis reported on July 27, 1956, that Serpas was suffering from a muscle spasm.) He then stated:

"The patient stated that he had a back injury in 1951, which was treated by taping, and subsided in approximately six days. Following

this injury he was not absent from work.

"The patient's complaint at this time is of pain in the lower back and down the left leg. However, the patient does state and emphasizes several times during course of the examination that he receives relief from the use of sacro-iliac belt. He has been performing light work for the past several months."

As to the facts making up the past history of the employee, both as shown by the above statement and as brought out on cross examination, it is plain that there is affirmative evidence both from the testimony of the employee himself and to some extent by the testimony of others who had observed him. Since, therefore, the trial court could find in favor of the truth of appellee's recitation of the facts constituting the history on which Dr. Orofino based his opinion, we cannot, of course, say that such opinion was based upon an "inaccurate history."

■■ The case thus becomes one in which there is a conflict in the medical testimony. The trial court expressly stated in its findings that it credited Dr.

1. The conclusion as to the extent of the injury and the basis for the doctor's opinion are expressed in the following excerpts from the testimony:
"Q. From past history of what this man gave you, is it your opinion that this injury that he allegedly sustained is that which caused the present difficulty? A. From the patient's history, yes.
"Q. In your opinion, Doctor, can this man do without the use of a belt which he now finds relief from? Can he do heavy lifting, extremely heavy lifting, say of one hundred pounds, or more? A. I should say, in the view of the patient's history of back pain since his injury, no, he cannot.
"Q. If he continued to do heavy work under pain and without the use of a back brace could this degenerate into a worse condition than is now present? A. Yes, it could. There could be increasing pressure on the nerve roots in the area causing some muscle weakness and may, perhaps, even muscle paralysis.

"Q. At the time you examined Mr. Serpas, was he, in your opinion, disabled from doing heavy work as that which is done by a carpenter? A. I think so.
"Q. Is it your opinion, sir, that Mr. Serpas, with this type of back condition, will it become better by itself without any type of help or treatment? A. In view of the duration of the symptoms I don't think that it is likely that it would become asymptomatic.
"Q. Is this operation, the fusion, or this fusion operation, is that considered a major operation? A. It is.
"Q. Do you know or do you have any opinion about what the possibility of a cure, an absolute cure is? In other words, if you made it, can you guarantee a cure? A. I cannot.
"Q. Could anyone else? A. No.
"Q. Do you know the approximate time of disability following an operation of this nature? A. It varies between nine months and a year."

Orofino's testimony, and to the extent that the findings of the other doctors were different "they are not credited." The Louisiana cases make it clear that the testimony of the injured person alone may under some circumstances be sufficient to establish a case of injury.

In the following cases, cited by appellant, the proposition is stated with some variation of language:

"In cases involving a conflict of medical testimony on a medical question, courts will turn to a consideration of lay testimony in the hope of reaching a solution." Sellers v. T. J. Moss Tie Co., La.App., 56 So.2d 878, 879.

"There are numerous cases where the courts have held that compensation will be granted on the testimony of the plaintiff alone where his testimony is consistent and there is nothing to indicate that his claim is false or exaggerated." Dixon v. W. Horace Williams Co., La.App., 8 So. 2d 724, 727.

"There is precedent in our jurisprudence for the application of the general principle that the testimony of a plaintiff alone is sufficient to make out his case, but this is subject to the further condition that there is nothing to discredit the plaintiff's account of the accident and the resulting disability and his statements are supported by the surrounding circumstances." Garrett v. Gaylord Container Corp., La.App., 71 So.2d 373, 374, 377.

See also Rutherford v. Frost Lumber Industries, Inc., La.App., 57 So.2d 914, and Powell v. Travelers Ins. Co., La.App., 58 So.2d 563.

■ Appellant strongly urges the proposition that the value of the opinion of an expert witness is dependent on and is no stronger than the facts upon which it is predicated, and it has no probative force unless the premises upon which it is based are shown to be true, citing Keener v. Fidelity & Casualty Co. of New York, La.App., 96 So.2d 509. Of course, there can be no dispute as to the correctness of this proposition. The difficulty which is here faced by the appellant, however, is that there is affirmative evidence from which the court could find that all of the statements by Serpas on which Dr. Orofino based his opinion are true. The court's findings indicated that it found them to be so. We think, therefore, that under the clearly erroneous rule we are bound by the finding of the trial court that at the time of trial appellee was still disabled from the injury received in January, 1956.

■ The degree and permanence of the injury are also, of course, questions of fact within certain legal limitations. The Louisiana Supreme Court has held that "work of any reasonable character," the words of the statute, means "work of the same or similar description." Scott v. Hillyer, Deutsch, Edwards, Inc., 217 La. 596, 46 So.2d 914, 916; Hughes v. Enloe, 214 La. 538, 38 So.2d 225. Appellant does not dispute this definition. The trial court, after hearing the medical evidence and the testimony of appellee and his lay witnesses, and after viewing the moving pictures showing appellee's physical agility on the two days there depicted, found:

"* * * Here plaintiff, formerly an able-bodied carpenter, doing heavy construction work at the time of his accident, by reason of his injury, can no longer accept employment in his chosen occupation in the heavy construction industry. His productive potential has been impaired to the extent that he is restricted to performing light work in his chosen occupation, at reduced wages, and then only with pain and the support of a back brace. He is an industrial invalid who can no longer perform 'work of the same or similar description' to that which he customarily performed at the time of his accident."

As we have said above, on the cold record before us, we think it quite clear that the trial court could have resolved the fact issue against the plaintiff. This

may, therefore, be considered a border-line case, but we cannot say these findings are without evidence to support them. Under the Louisiana decisions they satisfy the definition of total disability.

The judgment is affirmed.