TEGELS, Respondent v. WESTERN CHEVROLET CO. et al.,

Appellants

(139 N.W.2d 281)

(File No. 10213. **Opinion filed December 30, 1965**)

**Rehearing denied February 21, 1966**

**Woods, Fuller, Shultz & Smith,** and **Merle Johnson,** Sioux Falls, for employer and insurer, appellants.

**Shandorf & Bleeker,** Mitchell, for claimant and respondent.

HANSON, J.   In this Workmen's Compensation proceeding the employer, Western Chevrolet Company, and its insurer, Hardware Mutual Casualty Company, appeal from a judgment affirming an award for total disability granted by the Industrial Commissioner to the employee, Clarence Tegels.

In 1954 Tegels commenced working for the Western Chevrolet Company in Mitchell as a parts man. He was in good health except for a prior history of ulcers and a back injury sustained in prior employment. Cars were repaired and spray painted in the garage. The paint booth was a separate enclosure off a corner of the body shop area equipped with filters and an exhaust fan. Some spot painting was also carried on in the body shop area. As part of his duties Tegels delivered parts and paint to the repair body shop and paint booth. There was also a drum of paint remover or thinner outside the paint booth which Tegels used from time to time to wash the grease and grime from his hands.

In July 1956 Tegels began having severe headaches. A spot appeared on one of his cheeks. He experienced some instability and eye trouble and his hair started falling out. By December 1956 he had no body hair and had become nervous and irritable. His employment terminated December 10, 1956. The Industrial Commissioner found Tegels' condition resulted from exposure and inhalation of fumes from the spray painting operation conducted by the garage.

After terminating his employment Tegels received compensation payments from the Hardware Mutual Casualty Company under a group insurance policy carried by the garage. On March 19, 1957 the insurer wrote Tegels a letter advising they were investigating his injury and would either continue to make payments under the group policy or the Workmen's Compensation policy. On April 23, 1957 the insurer wrote Tegels that "* * * we have just received a report from Dr. Smith where-

in he indicates that your present condition was brought about by fumes from the paint spraying activities carried on in the garage and it was his opinion that your condition was directly related to this activity. We are therefore setting up a Workmen's Compensation Insurance file and have transferred all payments made under the Group Insurance to the Workmen's Compensation file and are bringing your payments up to date. * * * We will continue to pay you weekly compensation benefits at the rate of $26.84 per week until you are able to return to work or discharged by your doctors." On April 26, 1957 the employer filed a standard form of Employers First Report of Injury with the Industrial Commissioner. The insurer also filed receipts for compensation paid Tegels in accordance with its letter of April 23rd together with a letter from Dr. George Smith in which the doctor said "The diagnosis in the case based on clinical opinion is a toxic insult to the optic nerve and hair follicles presumed to be exposure to volatile agents in connection with automobile spray painting." The insurer paid compensation at the rate of $26.84 per week up to August 1, 1957 at which time all payments were stopped except medical and hospital expenses. On August 23, 1957 a letter was written by the law firm of Morgan & Fuller, of Mitchell, to the insurer with regard to Tegels' claim and a copy was filed with the Industrial Commissioner.

From December 1956 to July 1957 Tegels was not employed. From July to October 1957 he attended the Greer Refrigeration School in Chicago with assistance from the State Rehabilitation Department. After returning from Chicago he was employed part time by the S & T TV Company of Mitchell until the concern moved out of the city in 1958. Later on in 1958 he worked part time for an implement company setting up machinery. In 1959 he started repairing washing machines and small appliances in his own home. Other members of the family helped in this work. From 1956 to 1963 Tegels was hospitalized several times and was examined or treated by numerous doctors in Mitchell, Sioux Falls and Minneapolis. His condition was aggravated by an emotional or nervous disturbance which did not improve. Because of pain, extreme nervousness and instability he was unable to perform any gainful work in 1963.

Tegels did not file a formal claim for compensation with the Industrial Commissioner until May 1963. Because of this the employer and insurer contend his claim is barred by SDC 64.0611 which provides:

"The right to compensation under this title shall be forever barred unless within one year after the injury * * * a claim for compensation thereunder shall be filed with the Industrial Commissioner."

■ The purpose of requiring a claim for compensation to be filed by an injured employee, like notice of injury, is to protect employers against stale claims which cannot be promptly investigated. The employee's failure to file a formal timely claim with the Industrial Commission in the present proceeding in no way prejudiced the employer or its insurer. Both had notice of the injury and it was promptly and continually investigated.

■ Although this court has characterized the filing of a claim as a condition precedent to the right of an injured employee to maintain Workmen's Compensation proceedings, Weber v. Reihsen Mercantile Corporation, 77 S.D. 377, 92 N.W.2d 154, it nevertheless has recognized reasons or excuses for non-filing and late filing. In Bailey v. Hess, 55 S.D. 602, 227 N.W. 69, a formal claim for compensation was never filed by the injured employee and the court held a memorandum settlement agreement filed with and approved by the Industrial Commissioner was equivalent to a claim. Likewise, in Middleton v. City of Watertown, 70 S.D. 158, 16 N.W.2d 39, a settlement agreement entered into by the employee, employer, and insurer approved by and filed with the Industrial Commissioner was sufficient to confer "continuing jurisdiction upon the Industrial Commissioner for the determination of all questions of future liability due to the original injury and based on changes in the condition of the employee occurring subsequent to the original award * * *." Similarly, the employee's right to compensation in the present proceeding is not barred by failure to file a formal claim with the Industrial Commissioner within one year after the injury. The employer had notice of the injury and filed a report of the injury with the Commissioner. The claim was

promptly and fully investigated and the insurer notified the employee of its election to pay compensation under the Act. Thereafter payments were made and receipts, correspondence, and reports were filed with the Commissioner. All parties recognized the jurisdiction of the Commissioner over the claim. Under the circumstances, the continuing jurisdiction of the Commissioner was evoked and the claim was subject to subsequent review in accordance with SDC 64.0609.

It is next contended the employee did not sustain a compensable injury within the definition of SDC 64.0102(4) as "* * * only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form except as it shall result from the injury." The evidence shows that Tegels' condition came on gradually and progressed to the disabling point in December 1956 when his employment was terminated. Later on he became unstable and emotionally upset.

■ Appellants concede that poisoning qualifies as a compensable injury but only in the event it originates suddenly and is assignable to a definite time, place and circumstance. This was the type of injury involved in Meyer v. Roettele, 64 S.D. 36, 264 N.W. 191, in which the court rejected the contention that "injury by accident" was confined to instances where the cause of injury was accidental and adopted the liberal view of the word accident "as denoting an unlooked-for and untoward event which is not expected or designed." The court went on to say that "a disease may be an 'injury by accident' within the meaning of our statute. The exclusion is of any disease which is not an accidental injury or which does not result from such injury. It is generally recognized that accident as contemplated by the Workmen's Compensation Law is distinguished from so-called occupational diseases which are the natural and reasonably to be expected result of workmen following certain occupations for a considerable period of time. On the other hand, if the element of suddenness or precipitancy is present and the disease is not the ordinary or reasonably to be anticipated result of pursuing an occupation, it may be regarded as an injury by

accident and compensable." Subsequent cases have repeatedly held that in order for a disease to be compensable under our Workmen's Compensation Act, it must originate suddenly and be traceable to a definite time, place and circumstance. Johnson v. Concrete Materials Co., 70 S.D. 95, 15 N.W.2d 4; Tennis v. City of Sturgis, 75 S.D. 17, 58 N.W.2d 301; Elmstrand v. G & G Rug & Furniture Company, 77 S.D. 152, 87 N.W.2d 606; Oviatt v. Oviatt Dairy, 80 S.D. 83, 119 N.W.2d 649.

■ ■ We are aware of the diversity of authority on the subject of gradual type injuries under the variously worded compensation acts in this country. However, this jurisdiction is committed to the requirement that under our Workmen's Compensation Act a compensable injury must be accidental in character. As construed by this court the term "injury by accident" means a sudden, unexpected, unforeseen, or unusual physical or traumatic damage or harm traceable to a definite time, place, and circumstance. This distinguishes a compensable injury from

(1) A disease or condition which is not compensable unless it results from accidental injury, and

(2) Occupational diseases otherwise covered by statute. See SDC 1960 Supp. 64.08.

■ Claimant's condition or disease developed gradually and progressively over a relatively long period of time. There was no sudden, unforeseen, unexpected or unusual causal event or happening of an accidental nature. Consequently we are compelled to conclude such condition or disease does not constitute a compensable injury under our Workmen's Compensation Act.

Reversed.

ROBERTS, P. J., and RENTTO, J., concur.

BIEGELMEIER and HOMEYER, JJ., dissent.

BIEGELMEIER and HOMEYER, Judges (dissenting).

This court in Meyer v. Roettele, 64 S.D. 36, 264 N.W. 191, approved a commissioner's award, except for the amount, of

an employee who died as a result of eating food containing a toxin causing a disease—botulism—which resulted in his death. Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017, was cited in the opinion as denying recovery, but the court stated the Act should be "liberally construed to effectuate its purpose" and declined to follow the Pierce opinion. Later, the Supreme Court of Arizona referring to the Pierce case as a narrow rule and our Meyer opinion as citing and not following it, allowed recovery where an employee breathed carbon tetrachloride from October 1st to December 28th resulting in his death January 3rd. It wrote:

"An injury may be gradual and progressive and not immediately discoverable. * * * He breathed the fumes and was poisoned. * * *

"We hold therefore, anything we may have said in the Pierce case to the contrary notwithstanding, that there was an injury by accident in this case within the meaning of the Arizona Law, as now interpreted, in that the inhalation by the deceased of the fumes from the use of the poisonous carbon tetrachloride, under the circumstances heretofore stated, produced effects that were not intended, foreseen or expected. This was an unlooked for mishap, an unexpected, unusual and extra-ordinary event not reasonably contemplated as a part of normal conditions of employment." In re Mitchell, 61 Ariz. 436, 150 P.2d 355.

The commissioner found that claimant's condition resulted from a toxic insult to the general nervous system and that it was traceable to an inhalation of paint fumes at the place of his employment. The evidence shows he began his employment in 1954 and was in good health until July 1956 when definite symptoms of poisoning first appeared and his condition grew progressively worse until December 1956 when he was forced to quit his work. Under the record before us, we cannot say that the commissioner's findings are "unreasonable or palpably erroneous". It is unrealistic to apply the rule requiring a sud-

den happening traceable to a specific time, place, and circumstance (which language has been used frequently in our cases, but indiscriminately applied) to deny recovery.