PODIO, Respondent

v.

AMERICAN COLLOID COMPANY et al., Appellants

(162 N.W.2d 385)

(File No. 10482.  Opinion filed November 14, 1968)

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Employer and Insurer, appellants.

**Dillavou & Richards,** Deadwood and Spearfish, for claimant and respondent.

RENTTO, Judge.

This proceeding involves a claim made under our Workmen's Compensation Law. The claimant alleged that her husband died as a result of injury by accident arising out of and in the course of his employment by the American Colloid Company. After hearing, the Deputy Industrial Commissioner made findings of fact and conclusions of law sustaining her claim and awarded her the statutory compensation for death and costs. The petition for review filed by the employer and insurer was denied after which they appealed to the circuit court. It affirmed the decision of the Commissioner. From that judgment the employer and insurer appeal.

On January 18, 1965, the decedent, while installing a flashing under the roof of the Colloid Company Plant near Belle Fourche, South Dakota, slipped off a plank catwalk and fell about 10 feet onto a steel beam injuring his left shoulder and his back in the region of the left scapula. On examination it was determined that he had sustained a fracture of his left clavicle, probable fractures of his first and tenth ribs on the left side and internal injuries in his chest. This latter condition was never confirmed in subsequent examination. He was suffering intense pain in his left shoulder and his chest beneath the left scapula for which he was given medications and fitted with a clavicle splint and rib belt. He was not hospitalized because he insisted that he could rest better at home.

Later in January and again in February he returned to the attending doctor's office several times complaining of pain. On these visits his belt and brace were readjusted and he was given pain relievers and other medications, including antibiotics for a traumatic pleurisy. On one visit an x-ray of his chest was taken. This revealed a healthy chest except for a heart that was mildly enlarged and evidence of a hiatal hernia. He was not hospitalized until he returned complaining of pain on February 4th from which confinement he was released on February 6th. On that occasion an electrocardiogram was taken which was negative, but the tracing was abnormal suggesting an acute posterior infarct, but other findings were not such as are found

with an acute coronary. During this hospitalization he showed marked improvement and was permitted to return to his home.

Because of severe pains in his left chest he visited his doctor the following day. He was then hospitalized and remained there until February 15th. During this stay he complained of tenderness in the back in the vicinity of his left shoulder blade. An x-ray was taken, but it did not reveal anything not previously seen. His doctor found his heart to be regular and normal and when released he was in good condition. He next called on his doctor on March 3rd at which time he was feeling better, but was not permitted to return to work. He still had some pain in his back and shoulder. He died unexpectedly at his home on March 6th.

Decedent was 5 ft. 2 in. tall and weighed about 200 pounds while employed by the Colloid Company. He had never had a heart ailment and during the time he and the claimant were married his health was good. He had consulted doctors only twice during that time and on both occasions it was concerning his excess weight. As a result sometime prior to his employment by Colloid he had lost about 30 pounds. From the time of his injury to his death he lived a life of comparative inactivity, doing no work. The day he died he slept until about noon, visited a relative in the afternoon and did some light shopping. That evening while watching TV which seemed to amuse him, he called to his wife, who was in another room, that he was fainting away. Apparently he was dead when she got to him. He was then 54 years of age. The autopsy revealed that an acute coronary thrombosis was the cause of his death.

On this appeal it is contended that the Commissioner erred in finding that there was a causal relationship between the decedent's death and the accident of January 18, 1965. Without such relationship the decedent's death would not arise out of and in the course of his employment. As supporting the finding of causation claimant urges the testimony of decedent's attending doctor. His opinion was that decedent's death "was due to a contusion of the heart sustained when he fell." Appellants urge that this opinion should be disregarded because the

record does not support the premise on which it is based. Other medical testimony disputed this opinion and there was none corroborating it.

■ The value of an opinion of an expert witness is dependent on and entitled to no more weight than the facts upon which it is predicated. It cannot rise above its foundation. Oviatt v. Oviatt Dairy, Inc., 80 S.D. 83, 119 N.W.2d 649; Joffer v. Crusy's Power Brake & Supply, Inc., 83 S.D. 191, 156 N.W.2d 189; W. Horace Williams Company, Inc. v. Serpas, 5 Cir., 261 F.2d 857. Obviously such opinion has no probative force unless the premises upon which it is based are shown to be true.

■ The primary fact on which the attending doctor's opinion is based is that there was a contusion to decedent's heart. This is without support in the record. The electrocardiogram which was taken at his suggestion does not show a contusion to the heart, nor does the autopsy report. The validity of this evidence the doctor does not dispute. Moreover, he admitted on cross-examination that there was nothing in the record to sustain his assertion that decedent's heart had been bruised when he fell.[1] Consequently, his opinion furnished no medical support for the finding of causal relationship. In this connection it is of significance that the commissioner's memorandum of decision indicates he did not rely on or give any weight to the doctor's opinion in finding that the required causal relationship existed.

Based on the postmortem examination there was medical evidence that decedent had suffered two myocardium infarcts. One of these occurring near the time of his death and being the cause of it, while the other had occurred sometime before and

---

1. On cross-examination the testimony of the attending doctor concerning the claimed contusion was:
   "Q. And on February 4th an electrocardiogram was taken and it showed no contusion. A. You are referring to the electrocardiogram.
   "Q. The electrocardiogram. A. Apparently not.
   "Q. And there is nothing in the autopsy to show any contusion or bruise to the heart is there? A. No.
   "Q. There is nothing here to sustain your opinion as to contusions to the heart, is there? A. No.
   "Q. In any medical finding there is nothing. A. No."

at the time of his death was in the healing stage. In arriving at a finding of causality the Commissioner begins with the premise that decedent had never been afflicted with a heart condition or exhibited any symptoms of a heart ailment prior to the date of his accident.

From this he proceeds by finding: "That as a result of his accident said decedent suffered continuous and painful symptoms of cardiac impairment dating from the date of his injury to the date of his death." The medical testimony does not refer to any of the symptoms he exhibited as "symptoms of cardiac impairment". To determine what the Commissioner has reference to we may properly refer to his memorandum of decision. Christiansen v. Strand, 81 S.D. 187, 147 N.W.2d 415. They are therein designated "bridging symptoms" and stated thus:

> "the severe blow to the left clavicle suffered at the time of the accident; reoccurring chest and back pains; weakness; faintness; painful breathing; gray pallor; nausea, and such which no doubt strained the capabilities and placed an undue and terrific strain on decedent's heart and eventually resulting in his death."

In coming to this conclusion the Commissioner was apparently influenced by statements contained in a medical treatise which he had consulted.

He further found: "That as a proximate result of said injury decedent suffered two episodes of coronary artery occlusion resulting in myocardial infarction which caused his death." From his memorandum of decision it is clear that in arriving at this result he inferred that the first infarct was suffered on February 4th, and that it probably caused the second which resulted in his death. Neither of these inferences is supported by medical testimony.[2] In making these two findings without the

---

2. The doctor who performed the postmortem examination, as a witness for the claimant, testified:
   "Q. And so the first infarct, the date of which is not known, there is no way to reasonably, medically show the date of that infarct, in your opinion? A. Not quite like that.
   "Q. In any event, that one wouldn't be the one producing the cause of death. A. It wouldn't be the direct cause of death.
   "Q. The direct cause was that second clot? A. Yes, the second one is the direct one, but what we have trouble finding is without the first one would the second one cause death? This we don't know. God knows, we don't."

534

aid of medical experts, we think the Commissioner went beyond his proper and permitted sphere.

Establishing the precipitating cause of coronary thrombosis is difficult. Medical testimony to prove this issue is always desirable and in most cases indispensable. It is generally found in any well prepared presentation. Usually the resolution of this question is for the medical experts and triers of the facts. Peterson v. Ruberoid Company, 261 Minn. 497, 113 N.W.2d 85; Blecatais v. Manchester Gas Company, 103 N.H. 542, 176 A.2d 711, Thornbrough Well Servicing Company v. Brown, 223 Miss. 322, 78 So.2d 159. In Howe v. Farmers Cooperative Creamery of Madison, 81 S.D. 207, 132 N.W.2d 844, involving a back injury, we said: "Where there is no obvious causal relationship, the testimony of a medical expert may be necessary to establish the causal connection." See also Lohr v. Watson, 68 S.D. 298, 2 N.W.2d 6.

Concerning medical testimony generally in 2 Larson's Workmen's Compensation Law, § 79.54, we find this statement: "reliance on lay testimony and administrative **expertise** is not justified when the medical question is no longer an uncomplicated one and carries the fact-finders into realms which are properly within the province of medical experts." In our view the causal relationship in the circumstances here present is not obvious, nor do we think the medical question involved an uncomplicated one. It is not one which falls within the common experience and capability of lay persons, nor within their capacity to judge in the absence of expert medical assistance.

Writing concerning this issue in Campbell v. City of Chamberlain, 78 S.D. 245, 100 N.W.2d 707, a heart case where the question was whether decedent's work contributed to his death caused by a coronary occlusion, we said: "A finding that it did so contribute must rest on the testimony of professionals because the field is one in which laymen are not qualified by learning, or experience, to express an opinion." That observation is equally applicable here. The rule that Workmen's Compensation Acts must be liberally construed applies to the law, not to the evidence offered to support a claim. Berg-

ren v. Gustafson Construction Company, 75 S.D. 497, 68 N.W.2d 477. Accordingly, we hold that the finding of causal connection is without credible evidentiary support.

■■ In arriving at the questioned findings the Commissioner referred to and apparently relied on statements in a medical treatise urged upon him in claimant's brief. This work and the statements in question were not mentioned during the hearing of this matter. Our rule is that medical books or treatises are not admissible to prove the truth of statements therein contained. Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147. To the extent that statements contained in this medical treatise were relied on by the Commissioner his conduct violated this rule. It placed before him medical evidence, the truth or applicability of which the appellants had no opportunity to challenge by cross-examination or otherwise.

The claimant under our law had the burden of establishing that her husband's death arose out of and in the course of his employment by the American Colloid Company. Mehlum v. Nunda Cooperative Association, 74 S.D. 545, 56 N.W.2d 282. Because this was not done the judgment of the circuit court is reversed.

ROBERTS and BIEGELMEIER, JJ., concur.

HANSON, P. J., and HOMEYER, J., dissent.

HANSON, Presiding Judge and HOMEYER, Judge (dissenting).

In our opinion there is substantial credible evidence to sustain the Commissioner. We would affirm.