Richard WOLD, Claimant and Appellant,

v.

MEILMAN FOOD INDUSTRIES, INC.,
Employer and Respondent,

and

United States Fire Insurance Company,
Insurer and Respondent.

No. 12140.

Supreme Court of South Dakota.

Argued March 13, 1978.

Decided July 20, 1978.

Steven W. Sanford, of Braithwaite & Cadwell, Sioux Falls, for claimant and appellant.

Michael F. Pieplow, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for employer and insurer respondents.

MORGAN, Justice.

This is an appeal from the judgment entered by the trial court reversing an award of worker's compensation benefits to Richard Wold (Claimant) by the Deputy Di-

rector of the Department of Labor, Division of Labor and Management (Deputy Director). Claimant, who suffered a myocardial infarction (heart attack), contends that the trial court erred in finding that there was insufficient credible evidence to sustain the Deputy Director's findings that his heart attack was an injury assignable to a definite time, place and circumstance, and resulting from unusual exertion. We affirm.

Claimant, who was forty-two years old at the time of his heart attack, had spent most of his life working at manual or physical labor jobs. Up until December 9, 1974, he had worked for the last nine years at the same plant for three different employers, the last two years for Meilman Food Industries, Inc. (Meilmans). While employed at the plant, claimant's duties consisted entirely of assembly line work, primarily at the viscera table, where the internal organs are removed from cattle carcasses, and at the trimming line where foreign substances are removed from cattle carcasses hung on a moving line. During this two-year period, Meilmans ran the line of carcasses at a maximum rate of 130 head an hour, almost double the speed at which the previous owners had operated the chain. Also, when Meilmans increased the speed of the chain, they increased the number of duties the claimant was to perform.

In June, 1974, when the speed of the line at the viscera table was at its peak, and the number of duties required of claimant was also at its peak, claimant began experiencing pains in his back and in his chest. His request to see a doctor was refused by the foreman. After this experience, claimant requested an easier job and was transferred to the final trim line. Claimant had previously done this job under the old owners and had handled it without difficulty. After claimant had been transferred to the final trim line the task was changed, increasing the difficulty of the job by requiring the claimant to be responsible for the entire carcass rather than only a part of it. Nevertheless, the claimant performed this job nearly six months without complaint. About two weeks prior to the heart attack,

the claimant was required to do an additional task, that being the operation of a switch located some five feet from his position. The switch, which would derail condemned cattle, had previously been handled by the government inspector. Shortly thereafter, the claimant complained about the difficulty of the job.

On December 9, 1974, after again experiencing chest and back pains in the morning, claimant requested to see a doctor, but his request was denied and he continued to work the whole day. That evening the pain and dizziness became so bad that claimant went to a hospital. Dr. Michael Ferrell, who specializes in the field of internal medicine and has diagnosed and treated numerous heart attacks, was brought in as a consultant. After examining the claimant, Dr. Ferrell diagnosed a myocardial infarction.

In May, 1977, claimant filed a petition for a hearing before the Division of Labor and Management, Department of Labor, alleging that he had suffered a myocardial infarction (heart attack) arising out of and in the course of his employment with Meilmans. At the hearing on November 28th, before Deputy Director William Miller, the claimant was the only person to testify. The testimony of Dr. Ferrell, claimant's attending physician, was offered by deposition.

The Deputy Director made findings of fact and conclusions of law holding that the claimant's myocardial infarction was a compensable injury under SDCL 62–1–1.

Meilmans appealed the Deputy Director's decision to the Circuit Court of the Second Judicial Circuit. The trial court held that there was not substantial credible evidence to support the Deputy Director's decision, and claimant appeals.

We first note that the episode occurred before the 1975 amendment to SDCL 62–1–1(2), deleting "by accident" from the definition was effective.

The claimant having been successful before the Deputy Director, the standard for review is as set out in *Edge v. City of Pierre* (1931) 59 S.D. 193, 200, 239 N.W. 191, 194:

A decision of the [director] in favor of a claimant must be supported by affirmatively finding the existence of all material facts as to which claimant has the burden of proof. Such findings are not open to question by the reviewing court if the record exhibits any substantial credible evidence in support thereof.

Further:

The trial forum for ascertaining material facts is the [director] and facts so found must be accepted by the reviewing court, unless so palpably erroneous upon the record as to be unreasonable; such findings standing substantially upon the same plane as the verdict of a jury. [citations omitted] Upon a question of fact which might conceivably be decided either way on the record, the reviewing court has no right to substitute its view as to the existence or nonexistence of such fact for the view of the [director].

At the hearing, the Deputy Director heard the testimony of the claimant and the deposition of Doctor Ferrell, and from the evidence found, in substance, that after experiencing pain in the back and chest in June of 1974, the claimant requested and was transferred to a different area; that thereafter the tasks assigned to him in that area increased in difficulty; that two weeks prior to the episode, the employer added to his duties the operation of a derailing switch for condemned and retained cattle; that shortly prior to the date of the episode he complained that the job was too much; that midmorning of the date of the episode he complained of back and chest pains and asked to see a doctor, which request was denied; that he continued to work the rest of that day and at 10 o'clock that evening was admitted to the hospital where the myocardial infarction was diagnosed. Upon these findings the Deputy Director concluded that the injury sustained on December 9, 1974, was assignable to a definite time, place and circumstance; that the heart attack resulted from unusual exertion occur-

ring during the prior two-week period; and that the same is a compensable injury under SDCL 62-1-1.

Upon appeal to the circuit court those findings and conclusions were overturned by the trial court, which found, in substance, that the claimant had a preexisting heart condition; that the heart attack was contributed to and/or aggravated by his total period of employment, among other things; and that no substantial credible evidence existed that the myocardial infarction was attributable to the last two weeks of employment. His conclusions of law stated that the decision of the Deputy Director that the heart attack is attributable to the last two weeks of employment is not based on substantial credible evidence, and that the claimant's heart attack was not caused by unusual exertion attributable to a specific time, place and circumstance, and therefore not compensable.

Before examining the Deputy Director's findings, it is necessary to discuss the applicable law. In South Dakota, the pertinent statute is SDCL 62-1-1(2),[1] which defines "injury" or "personal injury" as the following:

(2) 'Injury' or 'personal injury,' only *injury by accident* arising out of and in the course of the employment, and shall not include a disease in any form except as it shall result from the injury. (Emphasis added.)

The key phrase is "injury by accident." Relying on this phrase, this court has adopted the "unusual exertion" rule in cases involving a preexisting disease. *Cooper v. Vinatieri*, 1950, 73 S.D. 418, 426, 43 N.W.2d 747, 751, sets forth the rule as follows:

[T]hat an employee with a diseased heart who suffers damage to his heart *as a result only of physical and mental exertion commonly incident to the kind of labor to which he has become accustomed* has not incurred 'only injury by accident'

1. As noted, SDCL 62-1-1(2) was amended in 1975 (S.L.1975 Ch. 322, § 1) in which the phrase "by accident" was deleted. However, since the injury in question occurred on De-

cember 9, 1974, under the old law, we at this time need not interpret the amended statute for its purported intent.

within the intendment of that phrase. (Emphasis added.)

See also *Tennis v. City of Sturgis,* 1953, 75 S.D. 17, 58 N.W.2d 301 and *Hanzlik v. Interstate Power Co.,* 1940, 67 S.D. 128, 289 N.W. 589. *Oviatt v. Oviatt Dairy Co.,* 1963, 80 S.D. 83, 85, 119 N.W.2d 649, 650, which is another worker's compensation case involving a heart attack, summarizes this court's holdings that:

It is settled law in this state that disease, or the aggravation of an existing disease, is compensable, but that such disease or aggravation must be assignable to a definite time, place and circumstance, [citation omitted] and that the disease, or aggravation of such disease, must result from unusual exertion. [citations omitted].

Unusual exertion has been found in the following cases: Where the decedent had been employed in a managerial capacity until pressed into service delivering milk on a route for two days and working ten to twelve hours each day in very cold weather, *Oviatt v. Oviatt Dairy Inc.,* supra; Where an operator of a tourist court who was pressed into service as a volunteer fireman and thus helped with the hose throughout the night was considered to have performed unusual exertion, *Tennis v. City of Sturgis,* supra; When a company serviceman, while exposed to the extreme cold, worked an average of eighteen hours a day for five days to repair the extensive damage done to the company's lines after a blizzard, *Hanzlik v. Interstate Power Co.,* supra; Where the decedent had to work an extra seven hours in the cold and wet trying to repair a broken main, *Campbell v. City of Chamberlain,* 1960, 78 S.D. 245, 100 N.W.2d 707.

In the present case, the Deputy Director found as a conclusion of law (which probably should have been a finding of fact as the trial judge points out) that:

[T]he heart attack suffered by the claimant resulted from unusual exertion occurring during the two week period prior to said attack.

The exertion that the Deputy Director found to be unusual apparently consisted of the additional duty of turning on and off the switch which operated the derailment of condemned cattle.

■ With this conclusion (finding) the trial court disagreed, stating that such finding was not based on substantial credible evidence. We agree with the trial court. Reviewing the record in accordance with the scope of review previously noted, we find that the Deputy Director's finding was not supported by substantial credible evidence even when viewed in a light most favorable to the finding.

■ We recognize that there is evidence showing that claimant's employment caused him much stress and strain, and that the company had been requiring the claimant to do more and more tasks than were usually required by other employers. However, the law requires unusual exertion that is assignable to a definite time, place and circumstance. In looking at the evidence most favorably to the claimant, the claimant's testimony of his additional duty of operating the switch hardly constitutes an unusual exertion such as that found in *Oviatt, Tennis* and *Hanzlik,* referred to above. Furthermore, claimant's expert medical testimony utterly failed to bolster his contention.

■ The testimony[2] of Dr. Ferrell, claimant's doctor, is crucial in that this court has held that to establish the causal relationship between one's employment and his subsequent heart attack, a finding must rest on the testimony of professionals because the field is one in which laymen are not qualified to express an opinion. *Podio v. American Colloid Co.,* 1968, 83 S.D. 528, 162 N.W.2d 385. Dr. Ferrell, in answer to a lengthy hypothetical question, did state or imply that the claimant's employment with Meilman Foods was a competent producing cause of the mild cardiac infarction that he

2. The testimony of Dr. Ferrell having been submitted by deposition can be reviewed by both the trial court and this court unhampered by the clearly erroneous rule. *Ayres v. Junek,* 1976, S.D., 247 N.W.2d 488.

suffered on December 9, 1974. However, there was no direct testimony relating the cause of the heart attack to the two-week period prior to the attack, which the claimant argues is the period of unusual exertion.

In fact, during cross-examination, Dr. Ferrell stated that in finding the claimant's employment was a contributing cause, it was more in the range of possibility than probability. He did state on redirect that the tension and the strenuous physical exertion of the claimant's employment was a contributory or aggravating factor in claimant's condition, but again failed to relate it to the crucial two-week period. It was held in *Rose v. John Deere Ottumwa Works*, (1956) 247 Iowa 900, 76 N.W.2d 756, that medical testimony to the effect that it is possible that a given injury caused a subsequent disability is insufficient, standing alone, to establish the causal relation under worker's compensation statutes. In *Holmes v. Bruce Motor Freight, Inc.*, (Iowa 1974), 215 N.W.2d 296, the court held that the claimant has the burden of proving by a preponderance of evidence that some employment incident or activity brought about the disability on which the worker's compensation claim is based; a possibility is insufficient and a probability is necessary. In *Ruderman v. Forman Bros.*, 1963, 157 Neb. 605, 609, 60 N.W.2d 658, 661, the Nebraska Supreme Court stated:

'A compensation award cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment.' [Citations omitted.]

Therefore, we hold that the expert medical testimony is defective on two counts. First, Dr. Ferrell does not assign the contributing or aggravating cause of the heart attack to the two-week period prior to the attack. Secondly, he terms the employment as possibly a contributing cause and not a probability.

This court has recognized that worker's compensation laws are remedial in character and are entitled to a liberal construction. *Meyer v. Roettele*, 1935, 64 S.D. 36, 264 N.W. 191; *Oviatt v. Oviatt Dairy Inc.*, supra. However, this rule of liberal construction applies only to the law, not to the evidence offered to support a claim, and does not permit a court to award compensation where the requisite proof is lacking. *Podio v. American Colloid Company*, supra. See also *Eschenbrenner v. Employers Mutual Casualty Co.*, 1957, 165 Neb. 32, 84 N.W.2d 169.

We hold that there is not substantial credible evidence to support the Deputy Director's decision, and the judgment of the trial court is affirmed.

WOLLMAN and PORTER, JJ., concur.

DUNN, C. J., and ZASTROW, J., dissent.

DUNN, Chief Justice (dissenting).

I dissent from the majority opinion. I would hold that there is substantial credible evidence to support the decision that the claimant's injury was compensable under our workman's compensation laws.

The applicable statutory definition of "injury" or "personal injury" includes the words "injury by accident arising out of and in the course of the employment." SDCL 62–1–1(2). This court has stated many times that "injury by accident" means that it is sufficient that the injury itself is unlooked for and unexpected and that it is not necessary that the cause of the injury should be untoward and unexpected, occurring without design. *King v. Johnson Bros. Construction Co.*, 1967, 83 S.D. 69, 155 N.W.2d 183; *Taylor v. Imperial Casualty & Indemnity Co.*, 1966, 82 S.D. 298, 144 N.W.2d 856; *Tegels v. Western Chevrolet Co.*, 1965, 81 S.D. 592, 139 N.W.2d 281; *Campbell v. City of Chamberlain*, 1960, 78 S.D. 245, 100 N.W.2d 707; *Tennis v. City of Sturgis*, 1953, 75 S.D. 17, 58 N.W.2d 301; *Johnson v. La Bolt Oil Co.*, 1934, 62 S.D. 391, 252 N.W. 869. See generally 1A Larson, Workman's Compensation Law, § 38.-00. This has also been expressed in *Taylor v. Imperial Casualty & Indemnity Co.*, supra, as follows: "Injuries are caused by accident according to the quality of the

result rather than the quality of the causes." 82 S.D. at 304, 144 N.W.2d at 859. The claimant's heart attack was certainly an unexpected, unlooked for injury which did not result by design. In my opinion, claimant's heart attack qualifies as an "injury by accident" within the applicable statutory language cited above.

According to the statute, the injury must also arise "out of and in the course of the employment." This is a clear indication that before an injury is compensable under our workmen's compensation laws there must be a showing of a causal connection between a claimant's employment and the injury upon which the claim is based. *Edge v. City of Pierre*, 1931, 59 S.D. 193, 239 N.W. 191. Establishing the precipitating (contributing) cause of a myocardial infarction is a difficult task. The majority opinion is correct in stating that a determination of whether an employment situation contributed to the injury must rest primarily on the testimony of medical experts because the field is one in which laymen are not qualified by learning or experience to express an opinion. Medical testimony was submitted by deposition in order to establish the causal relationship between the claimant's employment at Meilman Foods and his heart attack. The medical expert, Dr. Ferrell, in responding to the hypothetical question posed by claimant's counsel, stated that the claimant's employment with Meilman Foods was a competent producing cause of the claimant's myocardial infarction. Dr. Ferrell stated that the exertions resulting from increased line speed and expanded duties were "aggravating causes" and "contributory and/or aggravated factors" in the claimant's heart attack. On cross-examination, in responding to leading questions, Dr. Ferrell testified that he could not state categorically that the claimant's heart attack was caused by his employment with Meilman Foods or could be assignable to a specific time or carcass. Dr. Ferrell agreed with counsel on cross-examination that there were many stress situations which could contribute to the atmosphere for the development of heart diseases like that of the claimant. Dr. Ferrell further

agreed that the claimant's employment possibly could be such a contributing factor. The respondent's counsel then asked, "And in that regard, we are in the range of possibility rather than probability, are we not?" Dr. Ferrell replied, "Well, it's a fine line, I would say, yes, to your question." The doctor testified that he based his opinion on the difficulty experienced by the claimant while he was working and that the symptoms of a myocardial infarction increased during the claimant's period of strenuous exertion. Upon redirect examination, Dr. Ferrell stated that the tension and the strenuous physical exertion experienced in the claimant's employment was "a contributory or aggravating factor in this fellow's condition" and that nothing that counsel asked him during cross-examination caused him to change his mind regarding his conclusion as to contribution or aggravation of the heart attack by employment at Meilman Foods.

The majority opinion holds that the expert medical testimony is defective, based partly on the doctor's statement that the employment was possibly, not probably, a contributing factor. The majority cites Iowa authority for the proposition that this type of testimony, standing alone, is insufficient to establish the requisite causal relationship. I would agree with the majority *if* the possibility-probability statement was the doctor's only testimony. That statement, however, was not "standing alone" for the purpose of establishing the causal relationship. Dr. Ferrell stated elsewhere in his testimony that employment tension and stress contributed to and aggravated the claimant's heart attack. In South Dakota, the essential facts need not be proved by direct evidence but may be established by reasonable inferences from facts known to exist. *King v. Johnson Bros. Construction Co., supra; Mehlum v. Nunda Cooperative Ass'n*, 1952, 74 S.D. 545, 56 N.W.2d 282; *Schlichting v. Radke*, 1940, 67 S.D. 212, 291 N.W. 585; *Edge v. City of Pierre, supra*. Also, a compensation award should not be based upon mere possibility or speculation. *Harden v. South Dakota Credit Union*

*League, Inc.*, 1973, 87 S.D. 433, 209 N.W.2d 665. The lack of absolute and total certainty in part of the doctor's testimony should not be taken out of context to spoil the whole effect of his testimony or to nullify his firmly expressed view that the claimant's employment situation contributed to and aggravated his heart attack. It is my opinion that the doctor's testimony, taken in its entirety, is *not* mere speculation or conjecture but rather a substantial medical opinion necessarily equivocal to a small degree because of the inexactness and complexities of medical science.

The majority opinion further holds that the expert medical testimony is defective because the contributing or aggravating cause of the heart attack is not assigned precisely to the two-week period prior to the attack. In my opinion, the majority is taking an overly restrictive view of the requirement that compensable injuries must be assignable to a definite time, place and circumstance. *Oviatt v. Oviatt Diary, Inc.*, 1963, 80 S.D. 83, 119 N.W.2d 649. The claimant's testimony details his employment history, showing the considerable increases in the speed of the line at the viscera table which resulted in back and chest pains. After a transfer to the final trim line which was purportedly less difficult than the viscera table, there was a change in work tasks which increased the difficulty of the work. The claimant was held responsible for trimming all of the carcass rather than just one portion of the carcass as he was accustomed. This change required claimant to trim standing up and reaching over his head as well as down on his knees. There is testimony that Meilman Foods was slaughtering a grade of beef inferior to the grade slaughtered when claimant had performed the final trim task previously. This required more trimming of fats and foreign matter and more intensive government inspection. The line speed was also faster than claimant had experienced on the final trim task in previous years.

Approximately two or three weeks prior to the claimant's heart attack, claimant was further required to operate a derailer switch for condemned or retained beef. This function was formerly performed by government meat inspectors. To operate the switch, the claimant had to walk from his work station around a sink which is a distance of about five feet. This task was performed a considerable amount of the time. After this last task was added, the claimant complained to his foreman that the job with its added tasks was just too difficult for him. On December 9, 1974, toward midmorning, the claimant began having back and chest pains again. He complained of these pains to the foreman and asked that he be allowed to go home. The request was refused and the claimant was required to continue to work for the remainder of the day in spite of the fact that the back and chest pains persisted. That evening at around 10:00 o'clock, pain and dizziness forced the claimant into the hospital where a diagnosis of myocardial infarction was subsequently made. In my opinion, these facts and circumstances, which constituted the basis for the expert medical testimony, substantiate the reasonable conclusion made by the deputy director that the heart attack was assignable to a definite time, place and circumstance.

I believe that the time requirement is sufficiently definite if either the cause is reasonably limited in time or the result materializes at an identifiable point. See 1A Larson, Workmen's Compensation Law, § 39.00. In this case, the precipitating cause is reasonably limited in time to the two or three weeks immediately preceding the claimant's heart attack. Also, the result certainly materialized on December 9, 1974. The "definite time" requirement of *Oviatt* can vary to a reasonable extent depending upon the particular fact situation as long as the nexus between cause and effect is not obliterated. Basically, SDCL 62–1–1(2) addresses itself to the causal relationship between injury and employment. It is well recognized that this law is entitled to a broad and liberal construction in order to fully realize its humanitarian purposes. *Kraft v. Kolberg Mfg. Co.*, 1974, 88 S.D. 140, 215 N.W.2d 844; *Donovan v. Powers*, 1972, 86 S.D. 245, 193 N.W.2d 796; *Joffer v.*

*Crusy's Power Brake & Supply, Inc.*, 1968, 83 S.D. 191, 156 N.W.2d 189. The *Oviatt* requirements were adopted by the court to use as a tool in the construction and application of the workmen's compensation law and a restrictive, narrow interpretation of the *Oviatt* requirements can only lead to a frustration of the purpose of the workmen's compensation laws.

Additionally, the majority opinion finds that the second *Oviatt* requirement is lacking; namely, that the heart attack must result from unusual exertion. With this finding, I disagree. The testimony reveals the progressively debilitating effect of the mental and physical strain of increasing exertions required by the claimant's employment at Meilman Foods. It is clear that the increased difficulty of the tasks required of the claimant mandated unusual exertion. The evidence shows that the addition of the derailer switch task was the "last straw," making the job entirely too difficult and unusual for the claimant. Even adopting the most restrictive viewpoint, the work became unusual when the claimant was required to continue to work in a state of ill health on December 9, 1974, after he complained of chest and back pains and was not allowed to go home or see a doctor. For the claimant in poor physical condition, the strain involved in terms of its impact on him was no longer the usual one in any sense of the word. Upon the imposition of the additional task of operating the derailer switch and more specifically, on December 9, 1974, the usual exertions for the healthy laborer became transformed into the unusual exertions for the stricken claimant. See 1A Larson, Workmen's Compensation Law, §§ 38.64(c) and 38.83.

It is generally understood that when we consider the sufficiency of the evidence to support the findings for the claimant made by the deputy director, we must examine the evidence in the light most favorable to the claimant. After doing so, we should disturb the findings only if we can state that they are so palpably erroneous as to be unreasonable. *Kraft v. Kolberg Mfg., Co., supra; Joffer v. Crusy's Power Brake & Supply, Inc., supra; Howe v. Farmers Coop-*erative Creamery of Madison*, 1965, 81 S.D. 207, 132 N.W.2d 844; *Elmstrand v. G & G Rug & Furniture Company*, 1958, 77 S.D. 152, 87 N.W.2d 606. This I am unable to do. Even though we are not bound by the clearly erroneous rule with regard to the standard of review of the deposition testimony of the expert medical witness, the testimony of the claimant taken together with that of the expert medical witness on the whole record supports the deputy director's findings and conclusions by substantial, credible evidence. SDCL 1–26–36.

I would reverse the judgment of the trial court and remand the case to the trial court with instructions to have the deputy director enter the proper award of compensation.

I am authorized to state that Justice ZASTROW joins in this dissent.